**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ARMANDO AGUILAR MORALES, on** | § | |
| **behalf of himself and his minor daughter** | § | |
| **J.J.A.R., and PEDRO RAMOS PEREZ on** | § | |
| **behalf of himself and his minor son F.R.I.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-23-CV-00247-KC** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Defendant.** | § | |

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Page

STATEMENT OF ISSUES .................................................................................. xii

I.      INTRODUCTION .......................................................................................1

II.     FACTUAL BACKGROUND ........................................................................1

        A.      Overview ...........................................................................................1

        B.      Statutory framework for noncitizens entering the United States ............................2

        C.      Statutory framework for immigration custody relating to unaccompanied minors
                .............................................................................................................3

        D.      Flores Agreement requirements .......................................................4

        E.      Executive Branch directives regarding immigration enforcement .........................5

        F.      Detention of Plaintiff Aguilar Morales ..............................................6

        G.      Prosecution and detention of Plaintiff Ramos Perez.........................7

III.    ARGUMENT .............................................................................................8

        A.      Legal Standards.................................................................................8

                1.      Dismissal for lack of subject matter jurisdiction .........................8

                2.      Dismissal for failure to state a claim............................................8

                3.      Stating a claim under the FTCA ..................................................9

        B.      Plaintiffs' claims are barred for lack of subject matter jurisdiction.....................10

                1.      Legal standard for the discretionary function exception...........................10

                2.      The decision to prosecute Plaintiff Ramos Perez under the Zero-Tolerance
                        Policy and to detain him and Aguilar Morales in secure detention facilities
                        pending immigration proceedings are discretionary in nature..................13

                3.      Plaintiffs' remaining claims concerning their conditions of confinement
                        are also barred by the discretionary function exception ..........................19

i

4. Plaintiffs' assertion of unconstitutional conduct does not preclude application of the discretionary function exception ....................................21

C. Plaintiffs' claims relating to the decision to transfer J.J.A.R. and F.R.I. to the custody of ORR are barred by the FTCA's exception for actions taken while reasonably executing the law ...................................................................................25

D. Plaintiffs' claims are barred because there is no private person analogue ...........27

E. Plaintiffs' negligent hiring and supervision claims are barred by the DFE ...........29

F. The Independent Contractor Exception Bars Plaintiff Aguilar Morales' claims regarding J.J.A.R.'s alleged abuse while in a foster home ....................................31

G. Plaintiffs Fail to State a Claim Under Texas Law .................................................32

1. Plaintiffs fail to state a claim of intentional infliction of emotional distress ...........................................................................................................33

2. Plaintiffs fail to state a claim of negligence.................................................34

3. Plaintiffs fail to state a claim of abuse of process.......................................36

IV. CONCLUSION...........................................................................................................37

## **TABLE OF AUTHORITIES**

**Cases**

*Accardi v. United States*, 435 F.2d 1239 (3d Cir. 1970).................................................. 26

*Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1 (1st Cir. 2007) .................................................................................................................... 34

*Ahern v. United States*, 2:14-cv-259, 2017 WL 2215633 (S.D. Tex. May 19, 2017) ................. 24

*Ahern v. United States*, 2:14-CV-259, 2017 WL 2821949 (S.D. Tex. June 29, 2017)................. 24

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................... 25

*Antonelli v. Crow*, 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012).................................... 20

*A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020)........................................... 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 9

*Ashford v. United States*, 463 F. App'x 387 (5th Cir. 2012) ......................................... 17

*Baie v. Sec'y of*, Def., 784 F.2d 1375 (9th Cir. 1986)..................................................... 18

*Bailor v. Salvation Army*, 51 F.3d 678 (7th Cir. 1995)................................................... 17

*Baldassaro v. United States*, 64 F.3d 206 (5th Cir. 1995) .............................................. 12

*Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006) ........................................................... 24

*Barton v. Barr*, 140 S. Ct. 1442 (2020) ........................................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 8, 33

*Berkovitz v. United States*, 486 U.S. 531 (1988) ................................... 11, 15, 22, 23

*Bhuiyan v. United States*, 772 F. App'x 564 (9th Cir. 2019)........................................... 29

*Blanco Ayala v. United States*, 982 F.3d 209 (4th Cir. 2020)......................................... 14

*Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985)............................................... 26

*Bossin v. Towber*, 894 S.W.2d 25 (Tex. App.—Houston [14th Dist.] 1994) ............................. 36

*Brownback v. King*, 141 S. Ct. 740 (2021) .......................................... 9, 10, 32, 36

*Bryan v. United States*, 913 F.3d 356 (3d Cir. 2019)....................................................... 22

iii

*Bub Davis Packing Co. v. United States*, 443 F. Supp. 589 (W.D. Tex. 1977)............................ 26

*Bub Davis Packing Co. v. United States*, 584 F.2d 116 (5th Cir. 1978)........................................ 26

*Bultema v. United States*, 359 F.3d 379 (6th Cir. 2004).............................................................. 20

*Bunikyte, ex rel. Bunikiene v. Chertoff*, A-07-CA-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............................................................................................................................... 5, 18

*Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207 (D.C. Cir. 1997) ......................... 30

*Burney v. Carrick*, 170 F.3d 183 (5th Cir. 1999)......................................................................... 25

*Butz v. Economou*, 438 U.S. 478 (1978).................................................................................... 23

*Campillo v. U.S. Penitentiary Beaumont, Tex.*, 203 F. App'x 555 (5th Cir. 2006)..................... 24

*Campos v. United States*, 888 F.3d 724 (5th Cir. 2018) ................................................ 11, 20, 23

*Castro v. United States*, 608 F.3d 266 (5th Cir. 2010) ................................................................ 11

*Chen v. United States*, 854 F.2d 622 (2d Cir. 1988)................................................................... 28

*Clark v. Martinez*, 543 U.S. 371 (2005) ..................................................................................... 16

*Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736 (5th Cir. 1986)........................................................... 8

*C.M. v. United States*, CV-19-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020)................... 27

*C.M. v. United States*, CV-19-05217, 2020 WL 5232560 (D. Ariz. July 6, 2020)....................... 27

*Cohen v. United States*, 151 F.3d 1338 (11th Cir. 1998)...................................................... 13, 17

*Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434 (9th Cir.)............................................... 16

*Comm. of Cent. Am. Refugees v. I.N.S.*, 807 F.2d 769 (9th Cir. 1986)........................................ 16

*D.A. v. United States*, 3:22-cv-295, 2023 WL 2619167 (W.D. Tex. Mar. 23, 2023)....... 15, 20, 25

*D.B. v. Cardall*, 826 F.3d 721 (4th Cir. 2016)............................................................................. 18

*D.B. v. Poston*, 119 F. Supp. 3d 472 (E.D. Va. 2015) ................................................................ 18

*Dalehite v. United States*, 346 U.S. 15 (1953)...................................................................... 13, 26

*Davis v. Carlson*, 837 F.2d 1318 (5th Cir. 1988) ....................................................................... 35

*D. Houston, Inc. v. Love*, 92 S.W.3d 450 (Tex. 2002)................................................................ 35

*Dillard Dep't Stores, Inc. v. Silva*, 106 S.W.3d 789 (Tex. App. —Texarkana 2003, pet. granted) ................................................................................................................................................ 34

*Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370 (Tex. 2004) ................................................. 34

*Doe v. United States*, 831 F.3d 309 (5th Cir. 2016) .................................................................... 31

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ................................................... 9

*Dorsey v. Relf*, 4:12-CV-021, 2013 WL 791604 (N.D. Tex. Mar. 4, 2013) ................................ 31

*Dorsey v. Relf*, 559 F. App'x 401 (5th Cir. 2014) ...................................................................... 31

*Dupree v. United States*, 247 F.2d 819 (3d Cir. 1957) ................................................................ 26

*E.L.A. v. United States,* 2:20-CV-1524, 2022 WL 2046135 (W.D. Wash. June 3, 2022) ............ 36

*E.L.A. v. United States,* 2:20-CV-1524, 2022 WL 11212690 (W.D. Wash. Oct. 19, 2022) ........ 36

*Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018) .............................................................. 29

*Elgamal v. United States*, CV-13-00867, 2015 WL 13648070 (D. Ariz. July 8, 2015) ............... 29

*EPCO Carbon Dioxide Prod., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466 (5th Cir. 2006) ................................................................................................................................................... 9

*Fabian v. Dunn*, SA-08-cv-269, 2009 WL 2567866 (W.D. Tex. Aug. 14, 2009) ......................... 24

*F.D.I.C. v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364 (7th Cir. 1979) ............... 26

*F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) .......................................................... 9, 10, 11, 21, 35

*Fisher Bros. Sales v. United States*, 46 F.3d 279 (3d Cir. 1995) ................................................. 18

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ................................................................ 4, 6, 18

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) .............................................................................. 5

*Flores v. Sessions*, 85-cv-4544 (C.D. Cal. Feb. 2, 2015) ............................................................... 4

*Freeman v. United States*, 556 F.3d 326 (5th Cir. 2009) ....................................................... 12, 16

*Gandarillas-Zabrana v. Bd. of Immigr. Appeals*, 44 F.3d 1251 (4th Cir. 1995) .......................... 16

*Garza v. United States*, 161 F. App'x 341 (5th Cir. 2005) ..................................................... 23, 24

*Gordo-Gonzalez v. United States*, 873 F.3d 32 (1st Cir. 2017) .................................................... 30

*Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983) ............................................................................... 15

*Grost v. United States*, EP-13-CV-158, 2014 WL 1783947 (W.D. Tex. May 5, 2014) .............. 35

*Halbert v. City of Sherman, Tex.*, 33 F.3d 526 (5th Cir. 1994) .................................... 33

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................. 22

*Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552 (E.D. Va. 2006)............................. 21

*Harter v. United States*, 344 F. Supp. 3d 1269 (D. Kan. 2018)...................................... 36

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir. 1998)...... 8

*Huff v. Neal*, 555 F. App'x 289 (5th Cir. 2014)...................................................... 20

*Hunt v. Baldwin*, 68 S.W.3d 117 (Tex. App.—Houston [14th Dist.] 2001, no pet.).................. 36

*Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155 (1st Cir. 1987)........................... 26

*In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982 (9th Cir. 1987) ............... 32

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) .......................................... 15

*Janis v. United States*, 1:06-cv-1613, 2009 WL 564207 (S.D. Ind. Mar. 4, 2009) ............ 21

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ............................ 8

*Kristensen v. United States*, 993 F.3d 363 (5th Cir. 2021) .................................. 35

*Lane v. Brockman*, 3:18-CV-2745, 2019 WL 360836 (N.D. Tex. Jan. 9, 2019)..................... 24

*Lane v. Brockman*, 3:18-CV-2745, 2019 WL 359215 (N.D. Tex. Jan. 29, 2019)................... 24

*Lehman v. Nakshian*, 453 U.S. 156 (1981) ................................................... 10

*Leleux v. United States*, 178 F.3d 750 (5th Cir. 1999)........................................ 10, 36

*Lineberry v. United States*, 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) .......... 20

*Lipsey v. United States*, 879 F.3d 249 (7th Cir. 2018).................................... 17

*Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012)...................................... 28

*Lively v. United States*, 870 F.2d 296 (5th Cir. 1989) ................................... 26

*Lopez v. U.S. Immigr. & Customs*, Enf't, 455 F. App'x 427 (5th Cir. 2011) ............... 11

*Loughlin v. United States*, 393 F.3d 155 (D.C. Cir. 2004) ............................... 12

*Mazur v. U.S. I.N.S.*, 957 F. Supp. 1041 (N.D. Ill. 1997)............................. 29

*M.D.C.G. v. United States*, 956 F.3d 762 (5th Cir. 2020) ............................................................. 30

*Mejia-Mejia v. U.S. Immigr. & Customs Enf't*, 18-1445, 2019 WL 4707150 (D.D.C. Sept. 26, 2019) ......................................................................................................................................... 15

*Mirmehdi v. United States*, 662 F.3d 1073 (9th Cir. 2011) ........................................................ 17

*Ms. L. v. U.S. Immigr. & Customs Enf't* ("ICE"), 310 F. Supp. 3d 1133 (S.D. Cal. 2018).... 17, 25

*Ms. L. v. U.S. Immigr. & Customs Enf't* ("ICE"), 330 F.R.D. 284 (S.D. Cal. 2019) .................. 17

*Ortega v. U.S. Dep't of Homeland Sec.*, 1:18-CV-00508, 2018 WL 4222822 (W.D. La. July 6, 2018) ......................................................................................................................................... 16

*Ortega v. U.S. Dep't of Homeland Sec.*, 1:18-CV-00508, 2018 WL 4211864 (W.D. La. Sept. 4, 2018) ......................................................................................................................................... 16

*Patel v. United States*, 398 F. App'x 22 (5th Cir. 2010)............................................................. 20

*Payne-Barahona v. Gonzales*, 474 F.3d 1 (1st Cir. 2007) .......................................................... 34

*Peña Arita v. United States*, 470 F. Supp. 3d 663, 686-87 (S.D. Tex. 2020) .................. 15, 17, 20

*Porter v. United States*, 473 F.2d 1329 (5th Cir. 1973)............................................................... 26

*Powell v. United States*, 233 F.2d 851 (10th Cir. 1956) ............................................................. 26

*Radford v. United States*, 264 F.2d 709 (5th Cir. 1959) ............................................................. 31

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ............................................................. 8

*Rathod v. Barr*, 1:20-CV-161-P, 2020 WL 1492790 (W.D. La. Mar. 5, 2020) .......................... 35

*Rathod v. Barr*, 1:20-CV-161-P, 2020 WL 1501891 (W.D. La. Mar. 25, 2020) ........................ 35

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ........................................ 15

*Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204 (4th Cir. 2019)........................................ 24

*Ryan v. U.S. Immigr. & Customs*, Enf't, 974 F.3d 9 (1st Cir. 2020) ........................................... 29

*Santana-Rosa v. United States*, 335 F.3d 39 (1st Cir. 2003) ..................................................... 17

*Sasso v. Milhollan*, 735 F. Supp. 1045 (S.D. Fla. 1990)............................................................ 16

*Sea Air Shuttle Corp. v. United States*, 112 F.3d 532 (1st Cir. 1997) ........................................ 28

*S.E.B.M. by & through Felipe v. United States*, 1:21-CV-00095, 2023 WL 2383784 (D.N.M. Mar. 6, 2023)............................................................................................................... 14, 27

*Shirley v. United States*, 4:03-CV-1385, 2006 WL 708651 (N.D. Tex. Mar. 21, 2006) ............. 31

*Shirley v. United States*, 232 F. App'x 419 (5th Cir. 2007)..................................................... 31

*Sickman v. United States*, 184 F.2d 616 (7th Cir. 1950)......................................................... 26

*S.M.F. and A.R.M. v. United States,* 2:22-CV-01193-RAJ, 2023 WL 6215319 (W.D. Wash. Sep. 25, 2023 .................................................................................................................... 36

*Smith v. United States*, 375 F.2d 243 (5th Cir. 1967) ............................................................. 15

*Snyder v. United States*, 590 F. App'x 505 (6th Cir. 2014)...................................................... 30

*Spotts v. United States*, 613 F.3d 559 (5th Cir. 2010) ................................ 10, 12, 23, 35

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)...................................................... 8

*St. John v. Pope*, 901 S.W.2d 420 (Tex. 1995)........................................................................ 35

*Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) .................................................. 21

*Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121 (D.N.M. 2018) ............................................ 15

*Sydnes v. United States*, 523 F.3d 1179 (10th Cir. 2008) ....................................................... 12

*Tripp v. United States*, 257 F. Supp. 2d 37 (D.D.C. 2003)................................................ 35, 36

*United States v. Armstrong*, 517 U.S. 456 (1996) ................................................................. 14

*United States v. Dominguez-Portillo*, EP-17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ....................................................................................................................... 18, 24, 25

*United States v. Gaubert*, 499 U.S. 315 (1991) ................................................ 11, 12, 13, 22, 24

*United States v. Nixon*, 418 U.S. 683 (1974) ....................................................................... 15

*United States v. Olson*, 546 U.S. 43 (2005) .......................................................................... 28

*United States v. Orleans*, 425 U.S. 807 (1976)...................................................................... 31

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797 (1984)....................................................................................................................... 12

*United States v. Testan*, 424 U.S. 392 (1976) ...................................................................... 10

*United States v. Vasquez-Hernandez*, 314 F. Supp. 3d 744 (W.D. Tex. 2018) ................. 5, 18, 25

*United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019)......................................... 5, 18

*Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999) ........................................................ 16

*Van Horn v. Chambers*, 970 S.W.2d 542 (Tex. 1998) .................................................. 35

*Waganfeld v. Gusman*, 674 F.3d 475 (5th Cir. 2012) ................................................. 21

*Walding v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013) .............................. 32

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994) .................................................... 21

*Westbay Steel, Inc. v. United States*, 970 F.2d 648 (9th Cir. 1992) ............................. 28

*Westfall v. Erwin*, 484 U.S. 292 (1988) ..................................................................... 22

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) .................................................... 8

*Wilson v. Layne*, 526 U.S. 603 (1999) ...................................................................... 22

*Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex. 1993) .................................................. 33

*Wyatt v. Kroger Co.*, 891 S.W.2d 749 (Tex. App.—Fort Worth 1994) ........................... 33

## Statutes

6 U.S.C. § 279(a) ....................................................................................................... 3

6 U.S.C. § 279(b)(1)(a) ............................................................................................... 3

6 U.S.C. § 279(b)(1)(c) ............................................................................................... 3

6 U.S.C. § 279(b)(2)(B) ............................................................................................... 4

6 U.S.C. § 279(g)(2) ............................................................................................... 3, 18

8 U.S.C. § 1101(a)(3) .................................................................................................. 2

8 U.S.C. § 1182(d)(5) .................................................................................................. 3

8 U.S.C. § 1225(a)(1) .................................................................................................. 2

8 U.S.C. § 1225(a)(3) .................................................................................................. 2

8 U.S.C. § 1225(b) .................................................................................................. 2, 3

8 U.S.C. § 1226 ........................................................................................................... 3

8 U.S.C. § 1226(a)(2) .................................................................................................. 3

8 U.S.C. § 1231(g)(1) .......................................................................................... 3, 16, 17

8 U.S.C. § 1232(b)(1) ............................................................................................................ 3

8 U.S.C. § 1232(b)(3) ........................................................................................... 4, 6, 7, 27

8 U.S.C. § 1232(c)(2)(A) ...................................................................................................... 4

8 U.S.C. § 1232(c)(3) ........................................................................................................... 4

8 U.S.C. § 1232(c)(3)(A) ................................................................................................. 4, 19

8 U.S.C. § 1232(c)(3)(B) ...................................................................................................... 4

8 U.S.C. § 1232(g)(1) ......................................................................................................... 17

8 U.S.C. § 1325 .................................................................................................................. 14

8 U.S.C. § 1325(a) .............................................................................................. 3, 5, 6, 7, 15

8 U.S.C. § 1325(a)(1) ........................................................................................................... 7

8 U.S.C. § 1357 .................................................................................................................... 3

28 U.S.C. § 1346(b) ........................................................................................................ 9, 21

28 U.S.C. § 1346(b)(1) ............................................................................................. 2, 11, 28

28 U.S.C. § 2671 ................................................................................................................ 31

28 U.S.C. §§ 2671-2680 ....................................................................................................... 2

28 U.S.C. § 2674 ................................................................................................................ 28

28 U.S.C. § 2680 ................................................................................................................ 11

28 U.S.C. § 2680(a) ................................................................................................ 11, 12, 26

## **Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................... 1, 8, 10, 32, 36

Federal Rule of Civil Procedure 12(b)(6) ............................................... 1, 8, 10, 32, 36

## **Other**

Homeland Security Act of 2002, Pub. L. No. 107-296 (2002) ................................... 4, 5

H.R. Rep. No. 77-2245, 77th Cong., 2d Sess. .................................................... 13, 26

Restatement (Second) of Torts § 46 (1965) ................................................................. 33

U.S. DOJ Memorandum on Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a) (April 6, 2018), available at https://www.justice.gov/opa/press-release/file/1049751/download............ 6

## <u>STATEMENT OF ISSUES</u>

1.    Whether the discretionary function exception to the Federal Torts Claims Act (FTCA) bars Plaintiffs' claims.

2.    Whether the due care exception to the FTCA bars Plaintiffs' claims.

3.    Whether Plaintiffs' claims are barred because there is no private person analogue.

4.    Whether Plaintiffs' negligent hiring and supervision claims are barred by the discretionary function exception.

5.    Whether the independent contractor exception to the FTCA bars Plaintiff Aguilar Morales and J.J.A.R.'s claims regarding alleged abuse at the hands of another foster child.

6.    Whether Plaintiffs fail to state a claim for intentional infliction of emotional distress, negligence, and abuse of process.

## I.    INTRODUCTION

Defendant United States of America respectfully moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The United States does not defend the policy choices that led to family separations. But those policy decisions do not give rise to tort liability. The Plaintiffs file this action under the Federal Tort Claims Act (FTCA) seeking monetary damages from the United States. As discussed below, Congress has not waived the United States' sovereign immunity for the claims Plaintiffs assert in this action. As such, the claims are jurisdictionally barred.

Although the United States recognizes that several district courts adjudicating FTCA claims arising out of the Zero-Tolerance Policy have, to date, reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss, the United States respectfully submits that Congress has not waived sovereign immunity and Plaintiffs may not recover under the FTCA. In addition, Plaintiffs fail to state a claim upon which relief may be granted for their allegations of intentional infliction of emotional distress, negligence, and abuse of process. Accordingly, to the extent the Court exercises jurisdiction over Plaintiffs' claims, these claims should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    Overview

Plaintiffs Armando Aguilar Morales and Pedro Ramos Perez improperly entered the United States with their minor children, Plaintiffs J.J.A.R. and F.R.I., respectively, in April and May 2018. These adult plaintiffs were each held in secure detention pending their immigration proceedings. In the case of Ramos Perez, who was prosecuted for the crime of improper entry into the United

States, he was also held in secure detention pending his criminal proceedings. Meanwhile, Plaintiffs J.J.A.R. and F.R.I. were transferred to the care of the Department of Health and Human Services' Office of Refugee Resettlement (ORR). The adult plaintiffs were eventually removed to their home country while their children remained in the custody of ORR before their own removals.

Plaintiffs Aguilar Morales and Ramos Perez bring this action against the United States on their behalf and on behalf of their minor children, J.J.A.R. and F.R.I., respectively, under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking monetary damages for alleged injuries caused by: (1) Defendant's implementation of an alleged policy to refer for prosecution all individuals suspected of illegally entering the United States-Mexico border, including parents traveling with children (referred to herein as the "Zero-Tolerance Policy"); and (2) the conditions of confinement and treatment of Plaintiffs after they were separated.

The Court should not reach the merits of Plaintiffs' FTCA claims because Plaintiffs' alleged injuries are not compensable under the FTCA. Congress has not waived the federal government's sovereign immunity from claims for money damages in these circumstances. And even if Plaintiffs could establish subject matter jurisdiction, their causes of action for intentional infliction of emotional distress, negligence, and abuse of process would still fail to state a claim under Texas law.

**B.   Statutory framework for noncitizens entering the United States.[1]**

Noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. § 1225(a)(1), (a)(3), (b). When a

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

2

noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." *Id.* § 1325(a). Violation of § 1325(a) is a misdemeanor punishable by a fine and "imprison[ment] [of] not more than 6 months" for a first offense. *Id.*

Individuals arriving in or present in the United States who are deemed inadmissible also are subject to removal from the United States and, as appropriate, detention pending such removal. *See id*. §§ 1225(b), 1226, 1357. These provisions apply to both adults and children. The federal government possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *Id*. § 1231(g)(1). In some cases, DHS may exercise its discretion to release a noncitizen from custody pending a decision on removal. *See, e.g.*, *id.* §§ 1182(d)(5), 1226(a)(2).

**C.      Statutory framework for immigration custody relating to unaccompanied minors.**

Federal immigration law authorizes the United States to provide for the custody and care of minor children who are present in the United States without lawful immigration status. Specifically, ORR is charged with "the care and placement of unaccompanied alien children who are in Federal custody by reason of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom … there is no parent or legal guardian in the United States; or no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of

2008 (TVPRA), "[e]xcept in the case of exceptional circumstances, any department or agency …

shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such

child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the

least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR

"shall not release such children upon their own recognizance." 6 U.S.C. § 279(b)(2)(B). Rather,

once in ORR custody, there are detailed statutory and regulatory provisions that must be followed

before the child is released to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires

that "an unaccompanied alien child may not be placed with a person … unless the Secretary of

Health and Human Services makes a determination that the proposed custodian is capable of

providing for the child's physical and mental well-being" and that "[s]uch determination shall, at

a minimum, include verification of the custodian's identity and relationship to the child, if any, as

well as an independent finding that the individual has not engaged in any activity that would

indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a home study is

required. *Id*. § 1232(c)(3)(B).

**D.      Flores Agreement requirements.**

        In 1996, the federal government entered into a settlement agreement referred to as the

"Flores Agreement." *See, e.g., Flores v. Sessions*, 85-cv-4544 (C.D. Cal. Feb. 2, 2015), ECF No.

101. The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of

minors in the custody of the INS." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores

Agreement ¶ 9). The Homeland Security Act of 2002 abolished the Immigration and Naturalization

Service under the Department of Justice (DOJ) and merged its legacy components into (1) Customs

and Border Protection (CBP), (2) Immigration and Customs Enforcement (ICE), and (3) U.S.

Citizenship and Immigration Services (USCIS). Homeland Security Act of 2002, Pub. L. No. 107-

296, 116 Stat. 2135 (2002). These components are within DHS. *See id*.

According to the Ninth Circuit, the Flores Agreement "unambiguously" applies both to unaccompanied minors and to minors who are encountered together with their parents or legal guardians. *Flores*, 828 F.3d at 901. Under the Flores Agreement, the legacy INS agencies must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id*. at 902-03 (quoting Flores Agreement ¶ 12(A)). The legacy INS agencies must also "make and record the prompt and continuous efforts on its part toward … the release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agreement ¶ 18).

Notably, the Flores Agreement applies only to minors. *Flores*, 828 F.3d at 901. It "does not address … the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Vasquez-Hernandez*, 314 F. Supp. 3d 744, 761 (W.D. Tex. 2018), *aff'd*, 924 F.3d 164 (5th Cir. 2019) ("nothing in the [Flores] agreement expresses a preference for releasing parents who have violated immigration laws."). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Vasquez-Hernandez*, 314 F. Supp. 3d at 761; *Bunikyte, ex rel. Bunikiene v. Chertoff*, A-07-CA-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Though the Flores Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

**E.    Executive Branch directives regarding immigration enforcement.**

On April 6, 2018, Attorney General Jeff Sessions issued a "Memorandum for Federal Prosecutors along the Southwest Border" on "Zero-Tolerance for Offenses Under 8 U.S.C. §

1325(a)." U.S. DOJ Memorandum on Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a) (April 6, 2018), available at https://www.justice.gov/opa/press-release/file/1049751/download (the Zero-Tolerance Memorandum). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id*. In addition, on May 4, 2018, Homeland Security Secretary Kirstjen Nielsen approved a policy of referring for prosecution, to the extent practicable,  all adults amenable for illegal entry violations. Consistent with these directives, DHS began to refer for prosecution increased numbers of adults – including those traveling with children – who unlawfully entered the United States on the Southwest border in violation of § 1325. Minor children designated as UACs were transferred to ORR custody, as required by the TVPRA. *See* 8 U.S.C. § 1232(b)(3).

**F.      Detention of Plaintiff Aguilar Morales**

According to the Complaint, Plaintiff Armando Aguilar Morales entered the United States with his minor child, Plaintiff J.J.AR. on or about April 21, 2018. ECF No. 1, ¶ 14. DHS found Plaintiff Aguilar Morales inadmissible based on his past immigration history and ordered him removed. *Id.,* ¶ 16. He was held in secure immigration detention until his removal to Guatemala on approximately May 21, 2018. *Id.*, ¶ 27. Because Plaintiff Aguilar Morales would no longer be available to provide care and physical custody of his child, Plaintiff J.J.A.R was designated a UAC and transferred to the custody of ORR pursuant to the TVPRA. *See* 8 U.S.C. § 1232(b)(3). Plaintiff J.J.A.R. was transferred to the care of ORR which placed her in transitional foster care while the ORR care provider identified a suitable sponsor.

On or about May 21, 2018, Plaintiff Aguilar Morales was removed to Guatemala. *Id*., ¶ 27. On or about September 27, 2018, Plaintiff J.J.A.R. was removed to Guatemala following the

withdrawal of her application for admission and an immigration judge's grant of voluntary departure. *Id.*, ¶ 40. Plaintiffs Aguilar Morales and J.J.A.R. now reside in Nashville, Tennessee. *Id.*, ¶¶ 8, 9.

**G.      Prosecution and detention of Plaintiff Ramos Perez**

According to the Complaint, Plaintiff Pedro Ramos Perez illegally entered the United States with his minor child, Plaintiff F.R.I., on or about May 8, 2018. *Id.*, ¶ 47. Consistent with the Executive Branch enforcement directives discussed above, Plaintiff Ramos Perez was charged with violating 8 U.S.C. § 1325(a). Judgment in a Criminal Case, *Ramos-Perez,* EP-18-mj-03084, ECF No. 1. Plaintiff Ramos Perez was transported from the Border Patrol holding facility to criminal custody for his criminal proceedings. ECF No. 1, ¶ 48.

Because Plaintiff Ramos Perez would no longer be available to provide care and physical custody of his child, Plaintiff F.R.I. was designated a UAC and transferred to the custody of ORR pursuant to the TVPRA. *See id.*, ¶¶ 58, 59; 8 U.S.C. § 1232(b)(3). Plaintiff Ramos Perez was held in secure immigration detention until his removal to Guatemala on July 7, 2018. ECF No. 1, ¶ 56. Meanwhile, Plaintiff F.R.I. resided in a shelter for juvenile migrants. *Id.*, ¶ 58.

On or about May 18, 2018, Plaintiff Ramos Perez pled guilty to illegal entry under 8 U.S.C. § 1325(a)(1) and was sentenced to time served. *See* Judgment in a Criminal Case, *Ramos-Perez,* EP-18-mj-03084, ECF No. 1. Plaintiff Ramos Perez was deported to Guatemala on or about July 7, 2018. According to the Complaint, or about September 16, 2018, Plaintiff F.R.I. was removed to Guatemala. ECF No. 1, ¶ 63.[2] Plaintiff Ramos Perez now resides in Atlanta, Georgia. *Id.*, ¶ 10. Plaintiff F.R.I. now resides in Matthews, North Carolina. *Id.*, ¶ 11.

---

[2] ORR records indicate that F.R.I. was in ORR custody from May 10, 2018 to November 5, 2018.

## III.     ARGUMENT

**A.     Legal Standards**

**1.     Dismissal for lack of subject-matter jurisdiction.**

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Courts must consider the threshold issue of jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)*; Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

**2.     Dismissal for failure to state a claim.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. A plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

8

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint may be dismissed under Rule 12(b)(6) based on a successful affirmative defense that appears on the face of the complaint. *See EPCO Carbon Dioxide Prod., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). A court ruling on a motion to dismiss may rely on documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

3.      **Stating a claim under the FTCA.**

In an action against the federal government, a plaintiff must identify a claim as to which the government has waived its sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (describing sovereign immunity as "jurisdictional in nature"). Here, Plaintiffs' First Amended Complaint invokes the FTCA, which waives the United States' sovereign immunity for certain torts committed by federal employees while acting within the scope of their employment. 28 U.S.C. § 1346(b). "Federal courts have jurisdiction over these claims if they are 'actionable under 1346(b).'" *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (quoting *Meyer*, 510 U.S. at 477).

Section 1346(b) contains the following six requirements—all of which must be satisfied in order for an action to qualify within the FTCA's jurisdictional grant: the claim must be "'[1] against the United States, [2] for money damages, … [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b) (bracketed numerals added by the Court)).

Congress has not waived the United States' sovereign immunity with respect to claims arising from those policies. As the Supreme Court recently held in *Brownback*, "a plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim." 141 S. Ct. at 749. "That means a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." *Id*. And it also follows, as the Court held, that "where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6)." *Id*. at n.8.

**B.     Plaintiffs' claims are barred for lack of subject matter jurisdiction.**

**1.     Legal standard for the discretionary function exception.**

The United States, as a sovereign entity, is immune from suit except insofar as it has specifically and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160–61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See Meyer*, 510 U.S. at 475. "[T]he plaintiffs bear the burden of showing Congress's unequivocal waiver of sovereign immunity." *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010) (per curiam).

The FTCA is a "limited waiver of sovereign immunity." *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999). The statute allows individuals to sue the United States where a federal

employee's conduct, within the scope of his or her employment, causes "injury or loss of property, or personal injury or death." *See* 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity is subject to exceptions. *See id.* § 2680. When an exception applies, the United States retains its sovereign immunity and the court lacks jurisdiction. *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (per curiam) (en banc).

The FTCA's "discretionary function exception" (DFE) bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 535 (1988).

The Supreme Court has applied a two-part test to determine when the DFE applies. *Gaubert*, 499 U.S. at 328–32. Courts first ask whether the challenged conduct was in fact "discretionary in nature"—that is, whether the conduct involved "'an element of judgment or choice.'" *Id.* at 322 (quoting *Berkovitz*, 486 U.S. at 536). This prong is met unless "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Gaubert,* 499 U.S. at 322. A general mandate does not remove discretion. It must be so specific that it leaves the employee with no "room for choice." *Id.* at 324. In order to eliminate discretion, a directive must "specifically address[] how an official must confront a given situation." *Lopez v. U.S. Immigr. & Customs Enf't*, 455 F. App'x 427, 433 (5th Cir. 2011). It is the plaintiff's burden to identify a specific mandate that removes discretion. *See Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018).

Second, if the conduct involves choice or discretion, courts must next determine whether the judgment of the government employee was "of the kind that the discretionary function

exception was designed to shield." *Gaubert*, 499 U.S. at 322–23. Recognizing that tort actions challenging the government's discretionary policy judgments could "seriously handicap efficient government operations," Congress incorporated the DFE into the FTCA to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy" through a tort action. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). The focus of this inquiry is whether the "nature of the actions taken," pursuant to an exercise of discretion, "are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *see also Sydnes v. United States,* 523 F.3d 1179, 1185 (10th Cir. 2008) ("[W]e operate at a higher level of generality … asking categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns.").

The government need not prove that it considered these factors and made a conscious decision on the basis of them. *See Spotts*, 613 F.3d at 572. Indeed, under the second prong, the government actors' subjective intent is immaterial: "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation" but rather "on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *Gaubert*, 499 U.S. at 325 (emphasis added); *see also Freeman v. United States*, 556 F.3d 326, 337 (5th Cir. 2009) (subjective intent irrelevant to application of the DFE). Moreover, "when established government policy allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when he exercises that discretion." *Baldassaro v. United States*, 64 F.3d 206, 211 (5th Cir. 1995) (citing *Gaubert*, 499 U.S. at 325). And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a). Finally, the fact that a policy is later rescinded, as here, does not alter the DFE analysis. As the D.C. Circuit explained in *Loughlin v. United States*, 393 F.3d 155, 166 (D.C. Cir. 2004),

when the government discards a previous policy decision, "[t]he earlier judgment was no less a matter of policy because the later judgment was arguably better informed."

If both prongs of the *Gaubert* test are met, the DFE applies, the court lacks jurisdiction, and the claim must be dismissed. *See Cohen v. United States*, 151 F.3d 1338, 1340-41 (11th Cir. 1998). This result applies even where the government may have been negligent in the performance of such discretionary acts. The DFE analysis does not call upon the court to evaluate the merits of a given policy. As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The Supreme Court has also emphasized that the exception protects negligent or wrongful acts that are abuses of discretion. In *Dalehite v. United States*, 346 U.S. 15 (1953), the Court noted that the exception covers "both negligence and wrongful acts in the exercise of the discretion because the Act itself covers only 'negligent or wrongful act[s] or omission[s]'… The exercise of discretion could not be abused without negligence or a wrongful act." *Id.* at 33.

2.    **The decision to prosecute Plaintiff Ramos Perez under the Zero-Tolerance Policy and to detain him and Plaintiff Aguilar Morales in secure detention facilities pending immigration proceedings are discretionary in nature.**

Plaintiffs' claims based on the decision to detain Plaintiff Aguilar Morales pending immigration proceedings, which resulted in his separation from J.J.A.R, and the decision to criminally prosecute Plaintiff Ramos Perez, which resulted in his separation from F.R.I. are barred by the DFE because those decisions involved an element of judgment or choice and are susceptible to policy analysis. Plaintiffs do not allege that their apprehension by Border Patrol Agents was unlawful. Nor do Plaintiffs allege that government did not have discretion to refer Plaintiff Ramos

Perez for prosecution for illegal entry under 8 U.S.C. § 1325. Moreover, Plaintiffs do not challenge the government's discretion to hold Plaintiffs Aguilar Morales and Ramos Perez in secure detention pending immigration proceedings. And Plaintiffs do not challenge the government's discretion to conclude that, in these circumstances, J.J.A.R. and F.R.I. were unaccompanied within the meaning of the TVPRA.

These decisions, which resulted in the separation of Plaintiffs Aguilar Morales and Ramos Perez from their minor children pursuant to the TVPRA, are quintessentially discretionary. The DFE plainly applies to decisions relating to the apprehension of noncitizens for unlawful entry and referral for criminal prosecution. Indeed, "[d]iscretion lies at the heart of the DHS law enforcement function." *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020). In exercising this function, DHS agents must "make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability." *Id.* Moreover, immigration policy involves "vital national interests in law enforcement at the borders", and "DHS officers' decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations." *Id.* at 217. Thus, the decision to apprehend and refer for criminal prosecution are discretionary decisions that cannot be challenged. *See, e.g., S.E.B.M. by & through Felipe v. United States*, 1:21-CV-00095-JHR-LF, 2023 WL 2383784, at *15 (D.N.M. Mar. 6, 2023) ("[T]he government's prosecution of S.E.B.M.'s father, which immediately caused her to be separated from him, was a discretionary decision that violated no federal law cited by the parties and which was protected from liability by the discretionary function exception to the FTCA.").

As the Supreme Court has stated, "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation omitted). Indeed, "[t]he Supreme Court has long

recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case,* 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *see also Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("as an incident of the constitutional separation of powers, … the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."); *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983) (prosecutorial decisions are "quintessential[ly]" discretionary).

As other courts have recognized, the particular prosecution policy that was in place when Plaintiff Ramos Perez was prosecuted "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. U.S. Immigr. & Customs Enf't*, 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita v. United States*, 470 F. Supp. 3d 663, 686-87 (S.D. Tex. 2020); *Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1126 (D.N.M. 2018) ("Whether a person is prosecuted for [8 U.S.C. § 1325(a)] after a referral by DHS is a decision made by DOJ, and is subject to DOJ's prosecutorial discretion." (citation omitted)). *But see D.A. v. United States*, 3:22-cv-295-FM, 2023 WL 2619167, at *8 (W.D. Tex. Mar. 23, 2023) (prosecution policy "plausibly amounted to selective prosecution motivated by discriminatory animus against Latino immigrants. As a possible violation of Plaintiffs' equal protection rights, Defendant's incarceration of Padilla-Gonzales and separation from her children … is not protected by the [DFE].").

The DFE bars the Court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz*, 486 U.S. at 536-37. Moreover, concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S.

471, 490 (1999).

In determining the applicability of the DFE, the court looks only at whether the conduct or decision at issue is "susceptible to policy analysis" from an objective perspective; subjective intent is not part of the inquiry. *Freeman*, 556 F.3d at 337. Here, the government's decisions were not merely "susceptible to" policy analysis—the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives.

The government's decisions concerning whether and where to detain Plaintiffs Aguilar Morales and Ramos Perez for immigration proceedings were also discretionary and susceptible to policy analysis. The federal government possesses the express statutory authority to "arrange for appropriate places of detention for [noncitizens] detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[3] "Congress has placed the responsibility of determining where [noncitizens] are detained within the discretion of the [Secretary]." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir.), *amended*, 807 F.2d 769 (9th Cir. 1986); *see also Gandarillas-Zambrana v. Bd. of Immigr. Appeals* 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings … and therefore, to transfer aliens from one detention center to another."); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute)*; Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Ortega v. U.S. Dep't of Homeland Sec.*, 1:18-CV-00508, 2018 WL 4222822, at *4 (W.D. La. July 6, 2018), *R. & R. adopted*, 1:18-CV-00508, 2018

---

[3] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

WL 4211864 (W.D. La. Sept. 4, 2018) (citing 8 U.S.C. § 1232(g)(1)) (for the Attorney General's discretion to choose the detention facility of noncitizens).

"Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, it falls within [the DFE]." *Mirmehdi v. United States*, 662 F.3d 1073, 1082 (9th Cir. 2011); *see also Ashford v. United States*, 463 F. App'x 387, 395 (5th Cir. 2012) (per curiam) (placement of inmate covered by DFE); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions protected by DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units, … must be viewed as falling within the discretionary function exception to the FTCA"); *Cohen*, 151 F.3d at 1344 ("Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons.").

This discretion necessarily entails decisions regarding with whom noncitizens are detained, including decisions about whether adults and minors can be detained together. *See Peña Arita*, 470 F. Supp. 3d at 691–92 (decisions by DHS concerning where to house noncitizens are protected by the DFE, even if those decisions resulted in the separation of family members); *Ms. L. v. U.S. Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, at 1143 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019) ("parents and children may lawfully be separated when the parent is placed in criminal custody"). Although the Flores Agreement contains some requirements concerning the detention of minors, it does not specifically prescribe a course of action and thus does not remove the government's discretion.  Moreover, the Flores Agreement does not require

17

release of a parent or mandate that parents be housed with their children, and indeed does not apply

to parents. *Flores*, 828 F.3d at 908; *see also United States v. Dominguez-Portillo*, EP-17-MJ-4409-

MAT, 2018 WL 315759, at *7 (W.D. Tex. Jan. 5, 2018), *aff'd sub nom. Vasquez-Hernandez*, 314

F. Supp. 3d at 744, *aff'd*, 924 F.3d 164 (5th Cir. 2019); *Bunikyte*, 2007 WL 1074070, at *16.

Plaintiffs cite to no statutes, regulations, or policies that prescribe a specific course of

action that the government was required to take in connection with the prosecution of Plaintiff

Ramos Perez and the immigration detention of Plaintiffs Aguilar Morales and Ramos Perez.

Instead, the challenged decisions were the result of the exercise of discretion. Accordingly, the

exercise of statutory authority regarding whether and where to detain Plaintiffs for immigration

proceedings is protected by the DFE.

For similar reasons, the determination that J.J.A.R. and F.R.I. were "unaccompanied"

within the meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2).

Whether a parent is "available to provide care and physical custody" is a policy question vested in

federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482–83 (E.D. Va. 2015) ("[F]ederal

agencies are afforded discretion under the statutory scheme when classifying juveniles as

unaccompanied children."), *aff'd in part, vacated in part, remanded sub nom D.B. v. Cardall,* 826

F.3d 721 (4th Cir. 2016); *see also Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986)

("[I]nterpretation of the statute is a plainly discretionary administrative act the 'nature and quality'

of which Congress intended to shield from liability under the FTCA.").

The DFE protects the government's determination that J.J.A.R. and F.R.I. were

"unaccompanied" and thus protects the decision to transfer them to the custody of ORR pending

their father's immigration proceedings. *See Fisher Bros. Sales v. United States*, 46 F.3d 279, 287

(3d Cir. 1995) (holding that a decision is protected by the DFE when it "necessarily reflects the

decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data.").

In the end, Plaintiffs' allegations stem from government actions or decisions that were subject to discretion and susceptible to policy analysis.  To the extent that Plaintiffs suggest that the government should have released them into the interior, should not have prosecuted Plaintiff Ramos Perez for criminal violations of immigration law, should not have determined that J.J.A.R. and F.R.I. were unaccompanied, or should not have adopted the Zero-Tolerance Policy and related Executive Branch directives regarding immigration enforcement, they are challenging quintessential discretionary policy judgments subject to the DFE.

Plaintiffs also allege that J.J.A.R. was kept separated from her father and her family for over five months (ECF No. 1, ¶ 33); and, that F.R.I. was kept separated from his father and his family for over four months (*id*., ¶ 63). However, the timing of J.J.A.R. and F.R.I.'s release from ORR custody resulted from discretionary decisions regarding the health and safety of children in the government's custody. As outlined above, ORR seeks to verify the "custodian's identity and relationship to the child" and ensure "that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). Plaintiffs have not alleged any specific deadline imposed by statute or regulation on ORR for release of children to custodians. Such discretionary decisions are the precise sort of decisions that are protected by the DFE.

### 3.    Plaintiffs' remaining claims concerning their conditions of confinement are also barred by the discretionary function exception.

Plaintiffs also challenge their conditions of confinement, including the frequency of communications between Plaintiffs Aguilar Morales and Ramos Perez and their children (ECF No. 1, ¶¶ 34, 52), the adequacy of clothing, blankets, and food (*id*., ¶¶ 25, 55), and temperature and

cleanliness of the facilities (*id.*, ¶¶ 1, 14, 24).

Courts have repeatedly held that claims based on acts or omissions relating to "conditions of confinement" are barred by the DFE because the manner in which the government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations.  Such discretionary decisions are the precise sort of decisions that are protected by the DFE. *See Huff v. Neal*, 555 F. App'x 289, 298–99 (5th Cir. 2014) (per curiam) (DFE applied to placement of inmates and internal prison security); *Campos*, 888 F.3d at 733 (DFE applied to deficiencies in computer database that failed to reveal immigration status); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (per curiam) (DFE applied to decision to transfer prisoner); *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Lineberry v. United* States, 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) (allegation of overcrowding in prison barred by DFE); *Antonelli v. Crow*, 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by the DFE). In *Peña Arita*, the court rejected the plaintiffs' contention that associated determinations regarding conditions of confinement such as transfer decisions, where and how to house detainees or appropriate medical care were "nondiscretionary" in nature. Concluding that the DFE applied because the government decision-making regarding conditions of confinement was "susceptible to policy analysis," the court observed that it "must generally defer to the expertise of prison officials and is not to substitute its judgment for the considerations of such officials." 470 F. Supp. 3d at 691. *See also D.A.*, 2023 WL 2619167, at *12 ("Defendant retains sovereign immunity from Plaintiffs' claims to the extent they are based on the temperature, crowding, and lighting of the detention centers in which they were held.").

In particular, courts have held that detained individuals have "no right to unlimited telephone use", *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), and that a detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests," *id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *see also Waganfeald v. Gusman,* 674 F.3d 475, 485-86 (5th Cir. 2012) (in light of security risks and unique emergency conditions, it was not objectively unreasonable to prohibit pretrial detainees from using cellphones when landlines were unavailable during Hurricane Katrina); *see also Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim."); *Janis v. United* States, 1:06-cv-1613, 2009 WL 564207, at *14 (S.D. Ind. Mar. 4, 2009) ("telephone usage policy is discretionary with the authority of prison administrators, and the exercise of that discretion requires the balancing of policy considerations such as budget, facilities, staff resources, etc.").[4]

### 4. Plaintiffs' assertion of unconstitutional conduct does not preclude application of the discretionary function exception.

That Plaintiffs claim that certain alleged conduct violated the Constitution does not alter the discretionary function analysis.  Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees. *See Meyer*, 510 U.S. at 477 (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim"). As noted, the Supreme Court has explained that when a "federal statute, regulation, or policy *specifically prescribes* a course of action for an employee to follow,"

---

[4] The CBP manual cited in the Complaint demonstrates that what measures are "reasonable" involves discretionary determinations. *See, e.g.,* ECF No. 1 , ¶ 133 (CBP manual stating temperatures are to be "within a reasonable and comfortable range for both detainees and officers/agents.).

there is no further discretion to exercise. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536) (emphasis added). The Constitution is no different: in some cases, the Constitution may establish such a specific prescription that removes an official's discretion, but the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute.

The Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution. The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when the conduct violated the Constitution, so long as the constitutional right was not defined with sufficient specificity that the official should have known the act was prohibited. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (applying the "discretionary function[]" formulation and holding that officers were entitled to qualified immunity because, although their conduct violated the Fourth Amendment, the law was not clearly established at the time).

Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must "specifically prescribe[]" conduct in order to overcome the discretionary function exception, it referred to official immunity precedent, underscoring that the two standards operate in tandem. 486 U.S. at 536 (citing *Westfall v. Erwin*, 484 U.S. 292, 296–97 (1988)). Accordingly, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct, but only by a showing that the government official's discretion was cabined by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. *See*, *e.g.*, *Bryan v.*

22

*United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because … the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the discretionary function exception.).

Indeed, even before it specifically addressed the qualified immunity standards applicable to federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), recognized that the DFE would apply even if alleged conduct might later be held unconstitutional.  The Court in that case held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity.  The Court explained that were it otherwise, the recently recognized *Bivens* remedy would be illusory, and, as relevant here, it noted that "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused."  *Id.* at 505.  *Butz* and subsequent decisions thus leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the discretionary function exception.

The Fifth Circuit has not, in a controlling opinion, addressed under what circumstances an allegation of a constitutional violation removes discretion under the DFE.  *See Campos*, 888 F.3d at 735 ("This Court has not yet determined whether a constitutional violation, as opposed to a statutory, regulatory, or policy violation, precludes the application of the discretionary function exception.") (quoting *Spotts*, 613 F.3d at 569). However, in two unpublished opinions, the Fifth Circuit has held that a constitutional violation only removes discretion if it prescribed a specific course of conduct. *See Garza v. United States*, 161 F. App'x 341, 343–44 (5th Cir. 2005) (rejecting allegation that Eighth Amendment violation precluded application of DFE, and instead deciding to "join [its] sister circuits in recognizing that … the Eighth Amendment's prohibition against cruel and unusual punishment [does not] define a non-discretionary course of action specific enough to

23

render the discretionary function exception inapplicable."); *Campillo v. U.S. Penitentiary Beaumont, Tex.*, 203 F. App'x 555 (5th Cir. 2006) (per curiam) (same).[5]

Several district courts in Texas have agreed with *Garza. See*, *e.g.*, *Ahern v. United States*, 2:14-cv-259, 2017 WL 2215633, at *10 (S.D. Tex. May 19, 2017), *R. & R. adopted*, 2:14-CV-259, 2017 WL 2821949 (S.D. Tex. June 29, 2017) ("adopting the reasoning articulated in *Garza*" and finding § 2680(a) applicable despite argument that the government violated the plaintiff's rights under the Fifth Amendment, which was found to lack requisite specificity); *Fabian v. Dunn*, SA-08-cv-269, 2009 WL 2567866, at *8 (W.D. Tex. Aug. 14, 2009) (unaccompanied minors who illegally entered United States alleged government violated their Fifth Amendment rights in choosing a care provider facility where they were allegedly abused; claim held barred by DFE because Fifth Amendment does not prescribe a specific course of conduct, citing *Garza* as the "most applicable [] case"); *Lane v. Brockman*, 3:18-CV-2745, 2019 WL 360836, at *3-4 (N.D. Tex. Jan. 9, 2019), *R. & R. adopted*, 3:18-CV-2745, 2019 WL 359215 (N.D. Tex. Jan. 29, 2019) (relying on *Garza* to hold DFE applicable to defeat claim alleging constitutional violation).

In any event, Plaintiffs have identified nothing in the decisions of the Supreme Court or the Fifth Circuit that removed any official's discretion with respect to any of the alleged tortious actions by "specifically prescrib[ing] a course of action for an employee to follow". *Gaubert*, 499 U.S. at 322. Indeed, as the Fourth Circuit observed, "we … have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019); *see also Dominguez-Portillo*, 2018 WL 315759, at *6 ("the case law provides little guidance on how such parental rights are

---

[5] In the Fifth Circuit, unpublished decisions are not treated as precedent, but they can be relied upon as persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006).

actually manifested when a parent charged with a petty misdemeanor illegal entry offense is separated from their child who allegedly accompanied them across the border."); *see also id.* (noting "lack of clearly established parental rights in these circumstances and under case law"); *Vasquez-Hernandez*, 314 F. Supp. 3d at 763 ("any time the government detains or imprisons a parent for criminal activity, that parent's rights as to her children are implicated … But if that kind of interference were actionable under the Eighth Amendment, every imprisoned parent would arguably have a claim. That is not the state of the law."); *see also Ms. L.*, 310 F. Supp. 3d at 1143 ("[P]arents and children may lawfully be separated when the parent is placed in criminal custody[.]").

In their Complaint, Plaintiffs generally allege that their rights to family integrity and procedural and substantive due process were violated. *See* ECF No. 1, ¶¶ 136-139. However, "[t]he assertion of a *general* constitutional right that is clearly established is not sufficient; 'the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense … [so] that a reasonable official would understand that what he is doing violates that right.'" *Burney v. Carrick*, 170 F.3d 183, at *3 (5th Cir. 1999) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).[6]

**C.    Plaintiffs' claims relating to the decision to transfer J.J.A.R. and F.R.I. to the custody of ORR are barred by the FTCA's exception for actions taken while reasonably executing the law.**

Plaintiffs' claims relating to the decision to transfer J.J.A.R. and F.R.I. to the custody of ORR are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government,

---

[6] The United States acknowledges that several district courts, including another court in this district, have found that family separations under the policies at issue in this case may be unconstitutional. *See D.A.*, 2023 WL 2619167, at *10 (collecting cases at n.130).

exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid". 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)); *Lively v. United States*, 870 F.2d 296, 297–98 (5th Cir. 1989) (recognizing that the exception for actions taken while reasonably executing the law and the DFE are two separate exceptions under 28 U.S.C. § 2680(a)).

This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite,* 346 U.S. at 33; *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation … even though the regulation may be irregular or ineffective"). Thus, where a government employee's actions are authorized by statute or regulation—even if that statute or regulation is later found unconstitutional or invalid—the claim must be dismissed for lack of subject matter jurisdiction. *See*, *e.g.*, *Bub Davis Packing Co. v. United States*, 443 F. Supp. 589, 593 (W.D. Tex. 1977), *aff'd*, 584 F.2d 116 (5th Cir. 1978); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950); *F.D.I.C. v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364, 370 (7th Cir. 1979); *Borquez v. United States*, 773 F.2d 1050, 1052–53 (9th Cir. 1985); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160–61 & n.5 (1st Cir. 1987) (exception barred FTCA claim for destruction of prototype after FBI dismantled it during criminal investigation); *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir.

1973) (exception barred property damage claim of Lee Harvey Oswald's widow for damage to personal effects belonging to her late husband during FBI's investigation into President John F. Kennedy's assassination).

Here, the United States is required to "transfer the custody" of unaccompanied children to the care of ORR "not later than 72 hours after" determining that there is no parent or legal guardian available to provide care and physical custody absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that there was no parent or legal guardian available to provide care and physical custody for J.J.A.R. and F.R.I. on account of its discretionary decisions to detain Plaintiff Aguilar Morales in an adult immigration detention facility pending his removal and to refer Plaintiff Ramos Perez for criminal prosecution, to transfer him to criminal custody for prosecution, and to detain him in an adult immigration detention facility. Once those protected discretionary determinations were made, the TVPRA required that J.J.A.R and F.R.I. be transferred to ORR custody. The execution of that statutory command cannot form the basis of an FTCA claim.[7] *See S.E.B.M.*, 2023 WL 2383784, at \*16 (holding that minor's placement in ORR custody was protected by exception for reasonably executing the law).

**D.   Plaintiffs' claims are barred because there is no private person analogue.**

Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances

---

[7] In reaching the contrary conclusion, district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *see also C.M. v. United States*, CV-19-05217-PHX-SRB, 2020 WL 1698191, at \*4 (D. Ariz. Mar. 30, 2020), *motion to certify appeal denied,* 2020 WL 5232560 (D. Ariz. July 6, 2020). But, as just described, federal law does require that children be placed into ORR custody if there is no parent or legal guardian available to provide care and physical custody. And for the reasons described above, the decision to detain those parents for prosecution is a quintessentially discretionary one.

where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances". *Id.* § 2674. The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] 'in the performance of activities which private persons do not perform.'" *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotations omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if he or she were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analogue that would support a claim under the FTCA. The alleged harms here stem from the federal government's decision to enforce federal immigration laws, criminally prosecute certain individuals, and hold parents in custody pending immigration proceedings or prosecution, resulting in their children's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, as the decisions have no private-person counterpart. *See*, *e.g.*, *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct

for which private individual could be held liable and thus did not give rise to FTCA action); *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, CV-13-00867, 2015 WL 13648070, at *3 (D. Ariz. July 8, 2015), *aff'd sub nom. Elgamal*, 714 F. App'x at 741 (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Mazur v. U.S. I.N.S.*, 957 F. Supp. 1041, 1043 (N.D. Ill. 1997) (in matters relating to naturalization of noncitizens, "*only* the United States has the power to act[,]" and, "[a]ccordingly … there is no private analog under state law").[8]

### E.    Plaintiffs' negligent hiring and supervision claims are barred by the DFE.

Plaintiffs' negligent hiring and supervision claims (Count IV) are barred by the DFE. Plaintiffs allege that government employees in supervisory roles have a duty to properly supervise federal officers and to oversee their treatment of immigrants in their custody. ECF No. 1, ¶ 168.[9] They allege that the "blatant disregard for DHS's own internal policies and standards also demonstrates that DHS management staff were negligent in their nondiscretionary duties to

---

[8] Although civil in nature, immigration arrests and resulting detention are viewed as more akin to criminal enforcement. *See Ryan*, 974 F.3d at 27 ("Just as criminal arrests implicate the uniquely sovereign interests in enforcing the penal laws and protecting the public, so too do civil immigration arrests seek to vindicate similar kinds of interests in controlling immigration and the presence of noncitizens in the country.").

[9] Plaintiffs do not plead any facts to support their negligent hiring claim, and therefore seem to use negligent hiring and negligent supervision interchangeably.

supervise individual officers." *Id.*, ¶ 171. Plaintiffs have not identified any mandatory policy that directs precisely how to hire or supervise federal officers and to oversee their treatment of migrants in their custody, and accordingly, their claims are barred by the DFE.

The Fifth Circuit agrees with other circuits in holding "that federal employees' supervision of subordinates involves the kind of judgment that the discretionary function exception was meant to protect." *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) (citing *Gordo-Gonzalez v. United States*, 873 F.3d 32, 37 (1st Cir. 2017)); *Snyder v. United States*, 590 F. App'x 505, 509-10 (6th Cir. 2014); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)). In rejecting a claim of negligent supervision in *M.D.C.G.,* the Fifth Circuit cited to the First Circuit's decision in *Gordo-Gonzalez* to support its holding that negligent supervision claims are barred by the DFE. *See M.D.C.G.*, 956 F.3d at 772. In *Gordo-Gonzalez*, the First Circuit held that:

> [b]y its very nature, supervision is an ad hoc exercise, sensitive to policy considerations, the type of work being performed, and the experience and training of those performing that work. It almost always demands flexibility. […] Inherent in the performance of supervisory tasks are considerations of policy, a balancing of competing interests, and careful decision making regarding the level of micro-management of one's subordinates.

*Gordo-Gonzalez*, 873 F.3d at 37.

Similarly, in *M.D.C.G.* the Fifth Circuit held "[a]n agency's supervision of its employees involves matters of balancing management interests in the administration and operation of the agency to carry out effectively its governmental mission." *M.D.C.G.*, 956 F.3d at 772. The Court found that it had no jurisdiction over the negligent supervision claims because supervision of the Border Patrol Agent was within the agency's discretion.

The operational interests that an agency must balance in supervising employees to accomplish the agency's mission is the type of conduct the discretionary function exception is

intended to protect. The Fifth Circuit has applied the DFE not only to the supervision of federal employees but also to the supervision of government contractors. *See Doe v. United States*, 831 F.3d 309, 319-21 (5th Cir. 2016). Accordingly, Plaintiffs' claims of negligent supervision are barred.

Additionally, it is "settled law that the federal government has the unquestioned right to choose its own employees and is therefore not liable for acts done by it in the exercise of this right." *Radford v. United States*, 264 F.2d 709, 710 (5th Cir. 1959) (per curiam). "[B]ecause the United States' employment decisions are discretionary functions," Plaintiff's allegations of negligent hiring are also barred by the DFE. *Shirley v. United States*, 4:03-CV-1385, 2006 WL 708651, at *3 (N.D. Tex. Mar. 21, 2006), *aff'd*, 232 F. App'x 419 (5th Cir. 2007); *Dorsey v. Relf*, 4:12-CV-021, 2013 WL 791604, at *6 (N.D. Tex. Mar. 4, 2013), *aff'd*, 559 F. App'x 401 (5th Cir. 2014) ("[T]he discretionary function exception to the [FTCA] bars plaintiff's claims against United States for negligent hiring, training, supervision, and retention.").

**F.      The Independent Contractor Exception Bars Plaintiff Aguilar Morales' claims regarding J.J.A.R.'s alleged abuse while in a foster home.**

Plaintiffs' allegations that J.J.A.R. endured abuse while in foster care are barred by the FTCA's independent contractor exception. The FTCA "was never intended … to reach employees or agents of all federally funded programs that confer benefits on people." *United States v. Orleans*, 425 U.S. 807, 813 (1976). It waives sovereign immunity only for tortious conduct of an "employee of the Government," and it expressly "excludes 'any contractor with the United States.'" *Id.* at 813-14 (quoting 28 U.S.C. § 2671). The FTCA thus preserves sovereign immunity for torts committed by government contractors or their employees. *Id.*

Plaintiff Aguilar Morales alleges that J.J.A.R. suffered abuse at the hands of another foster child during her foster home placement through Cayuga Centers. ECF No. 1, ¶¶ 36-37. While in

foster care, an independent contractor was responsible for J.J.A.R.'s care. *See Walding v. United States*, 955 F. Supp. 2d 759, 794-95 (W.D. Tex. 2013) (holding that an ORR grantee was an independent contractor). Plaintiffs do not allege that J.J.A.R.'s foster care parent, or employees of Cayuga Centers, were employees of the United States. *See* ECF No. 1. ORR contractors that provide shelter and care for UACs are not employees of the United States within the meaning of the FTCA. *Walding*, 955 F. Supp. 2d at 791-811 (independent contractor exception barred claim that United States negligently failed to ensure health and safety of minors housed at grantee facility). Indeed, Plaintiffs acknowledge Cayuga Centers was a contractor that had agreed to adhere to ORR requirements. ECF No. 1, ¶¶ 30-31. Further, Plaintiffs do not allege that ORR negligently selected or supervised Cayuga Centers. *See* ECF No. 1. Even if they did, as the *Walding* court noted, the discretionary function exception bars such claims, because the selection of a contractor to provide custody and care of UACs is within ORR's policy-based discretion. 955 F. Supp. 2d at 771-72 ("the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations"). ORR also has discretion with respect to its supervision of grantees, which involves "policy decisions concerning how to allocate its resources to oversee the facilities and personnel." *Id.* at 783; *see also In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 995 (9th Cir. 1987) (holding DFE barred claim that government negligently supervised contractor's compliance with safety procedures and guidelines).

**G.    Plaintiffs Fail to State a Claim Under Texas Law.**

To the extent that the Court exercises jurisdiction over one or more of Plaintiffs' claims, their claims should be dismissed for failure to state a claim upon which relief may be granted. Therefore, all of Plaintiffs' claims should be dismissed under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). *See Brownback*, 141 S. Ct. at 749 n.8.

1.      **Plaintiffs fail to state a claim of intentional infliction of emotional distress.**

In their first cause of action, Plaintiffs allege a claim for intentional infliction of emotional distress related to their separation and treatment while in detention. ECF No. 1, ¶¶ 150-157. As previously argued, Plaintiffs' separation-based claims are not cognizable under the FTCA and Texas law. In addition, because Plaintiffs have not pleaded facts which support the essential elements of this claim giving rise to a plausible right of recovery for intentional infliction of emotional distress, their separation-based claims should be dismissed.

The elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993); *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994). In *Wornick*, the Texas Supreme Court described the outrageous conduct element as that which "[goes] beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Wornick*, 856 S.W.2d at 734 (citing Restatement (Second) of Torts § 46 (1965)). The Court must determine as a matter of law whether the alleged conduct may reasonably be regarded as so extreme and outrageous so as to permit recovery. *Wornick*, 856 S.W.2d at 734; *see also Wyatt v. Kroger Co.*, 891 S.W.2d 749, 754 (Tex. App.—Fort Worth 1994), *writ denied* (Aug. 1, 1995).

Here, Plaintiffs' intentional infliction of emotional distress claims are largely based on their separation. Plaintiffs' allegations are insufficient to state a plausible claim for intentional infliction of emotional distress under Texas law. *See Twombly*, 550 U.S. at 555. Stated simply, where, as here, a parent is separated from his child due to detention pending the parent's criminal prosecution and/or immigration proceedings, the decision to separate is neither extreme nor outrageous under

Texas law. *Cf. Dillard Dep't Stores, Inc. v. Silva*, 106 S.W.3d 789, 797 (Tex. App.—Texarkana 2003, pet. granted), *review granted, decision aff'd as modified*, 148 S.W.3d 370 (Tex. 2004) (where probable cause exists for an arrest, the decision to initiate criminal proceedings "cannot constitute outrageous behavior."). Indeed, the risk of interference with the parent-child relationship is inherent to criminal and immigration detention. *See Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 22 (1st Cir. 2007) (recognizing that "every [detention pending removal] of a parent, like every lawful arrest of a parent, runs the risk of interfering in some way with the parent's ability to care for his or her children."); *cf. Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007) (holding that if a child had a constitutional right to object to his or her parent's deportation it would be "difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service.").

Plaintiffs therefore fail to state a claim for intentional infliction of emotional distress based on their separation.

### 2.    Plaintiffs fail to state a claim of negligence.

In their second cause of action, Plaintiffs allege negligence by the United States. ECF No. 1, ¶ 160. The Complaint characterizes the alleged negligence broadly as a breach of "the duty of care it owed to Plaintiffs by providing inadequate care and custody during detention." *Id.* Defendant has addressed allegations regarding Plaintiffs' conditions of confinement, including the appropriateness of medical care received while in detention, in other parts of this motion. *See e.g.,* Section B.3, *supra*. However, to the extent Plaintiffs attempt to raise a claim of negligence based on the separations themselves, that claim must also fail. Plaintiffs fail to identify an actionable duty under Texas law that was allegedly breached by Plaintiffs' separation.

To maintain a negligence claim under Texas law, a plaintiff must show "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *see also Tripp v. United States*, 257 F. Supp. 2d 37, 45 (D.D.C. 2003) ("Unless plaintiff can establish a duty under District law to keep employee records such as security clearance application forms confidential, she cannot state a claim for negligence under the FTCA."); *Grost v. United States,* EP-13-CV-158-KC, 2014 WL 1783947, at *19 (W.D. Tex. May 5, 2014) (holding that Plaintiff failed to state a claim for negligence because Texas did not recognize a duty to prevent a hostile work environment). This is true even if the Court finds that a sufficient private-person analog exists for Plaintiffs' claims. *See e.g., Tripp*, 257 F. Supp. 2d at 45. Nor does the FTCA's waiver of sovereign immunity extend to claims premised on alleged violations of federal constitutional rights. *Meyer*, 510 U.S. at 477-78; *Spotts,* 613 F.3d at 565 n.3 ("Constitutional torts, of course, do not provide a proper predicate for an FTCA claim."). The existence of a duty is a threshold question of law. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998); *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995).

Plaintiffs have not identified any duty under Texas law to keep them unified while Plaintiff Aguilar Morales was held in immigration proceedings, or while Plaintiff Ramos Perez was prosecuted and detained pending his removal. *Cf. Rathod v. Barr*, 1:20-CV-161-P, 2020 WL 1492790, at *2 (W.D. La. Mar. 5, 2020), *R. & R. adopted*, 1:20-CV-161-P, 2020 WL 1501891 (W.D. La. Mar. 25, 2020) (holding in a habeas matter that a noncitizen "does not have a right to be housed in any particular facility, nor does this court have the authority to order the ICE to house [a noncitizen] in any particular facility."); *cf. Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (per curiam) (denying mandamus and holding that the Bureau of Prisons has "no clear

duty—*nor indeed, any duty*" to transfer a prisoner to a facility near his wife) (emphasis added). Thus, Plaintiffs have not stated a claim for negligence, and their separation-based claims should be dismissed.[10]

### 3.    Plaintiffs fail to state a claim of abuse of process.

Plaintiffs also fail to plead facts supporting the essential elements of their claim for abuse of process (Count III). Abuse of process is the malicious use or misapplication of process to accomplish an ulterior purpose. *Hunt v. Baldwin,* 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The elements are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the plaintiff as a result of the illegal act. *Id.*; *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994), *writ denied* (Nov. 16, 1995)). To state a claim for abuse of process, Plaintiffs must plausibly allege that their immigration proceedings and/or Plaintiff Ramos Perez's criminal prosecution were "unwarranted or unauthorized by law." *See E.L.A. v. United States*, 2:20-CV-1524-RAJ, 2022 WL 2046135, at *6 (W.D. Wash. June 3, 2022) *reconsideration denied*, 2:20-CV-1524-RAJ, 2022 WL 11212690 (W.D. Wash. Oct. 19, 2022)

---

[10] While the *Tripp* court dismissed the plaintiff's claim for failure to identify an applicable duty under Federal Rule of Civil Procedure 12(b)(6), other courts dismiss on these grounds under Federal Rule of Civil Procedure 12(b)(1), holding that the United States maintains its sovereign immunity because a private person would not be liable under the same circumstances. *Compare Tripp*, 257 F. Supp. 2d at 38, 44 to, *e.g., Harter v. United States*, 344 F. Supp. 3d 1269, 1285 (D. Kan. 2018) ("Because the FTCA's waiver of sovereign immunity extends only to conduct for which a private person could be held liable under state tort law, this Court lacks subject matter jurisdiction to hear Plaintiffs' claims."). In *Brownback*, the Supreme Court approved of both practices. 141 S. Ct. at 746; *see also Leleux*, 178 F.3d at 759 (holding that when a plaintiff failed to identify an applicable duty, her "complaint fail[ed] to state a claim and was properly dismissed under Rule 12(b)(6) as barred by § 2680(h)"). The United States primarily raises its failure-to-state a claim argument under 12(b)(6) and alternatively under Rule 12(b)(1).

(dismissing claim for abuse of process under Texas law in family separation case). To sustain a claim for abuse of process, the plaintiff must establish that the process itself was "used for a purpose for which it was not intended." *Hunt*, 68 S.W.3d at 130. When the process is used for the purpose for which it is intended, no abuse of process has occurred. *Id.* at 130; *see also S.M.F. and A.R.M. v. United States,* 2:22-CV-01193-RAJ, 2023 WL 6215319 (W.D. Wash. Sept. 25, 2023).

Here, plaintiffs have failed to state the first element of an abuse of process claim. Instead, they allege the use of the process exactly as it was authorized: to pursue removal proceedings against Plaintiff Aguilar Morales, a noncitizen who was inadmissible, and against Plaintiff Ramos Perez, a noncitizen who entered the United States without inspection. The allegations in the Complaint do not state a claim for abuse of process.

## IV.   CONCLUSION

For the foregoing reasons, Defendant United States requests that this action be dismissed.

Respectfully submitted,

**JAIME ESPARZA**
UNITED STATES ATTORNEY

/s/ Angelica A. Saenz
**ANGELICA A. SAENZ**
Assistant United States Attorney
Texas State Bar No. 24046785
Email:  Angelica.Saenz@usdoj.gov
**MANUEL ROMERO**
Assistant United States Attorney
Texas State Bar No. 24041817
Email: Manuel.Romero@usdoj.gov
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
Office: (915) 534-6555
Facsimile: (915) 534-3490
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of October, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants: Christopher Benoit, Coyle & Benoit PLLC and Julie R. Ulmet, The Law Offices of Julie R. Ulmet, *Attorneys for Plaintiffs*.

/s/ Angelica A. Saenz
**ANGELICA A. SAENZ**
Assistant United States Attorney