IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ARMANDO AGUILAR MORALES, on behalf of himself and his minor daughter J.J.A.R., and PEDRO RAMOS PEREZ on behalf of himself and his minor son F.R.I., | § § § § § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-00247-KC |
| | § | |
| THE UNITED STATES OF AMERICA, | § | |
| | § | |
| *Defendant*, | § | |

**PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE
TO FILE RESPONSE IN EXCESS OF PAGE LIMIT**

COMES NOW Plaintiffs Armando Aguilar Morales and his minor daughter J.J.A.R., and Pedro Ramos Perez and his minor son F.R.I., by and through their counsel of record and file this Motion for Leave to File Response in Excess of Page Limit. The Response in issue – Plaintiff's Response to Defendant's Motion to Dismiss – is attached to this motion as Exhibit 1. In support of their motion, Plaintiffs respectfully show the Court the following:

1.      On June 28, 2023, Plaintiffs filed their Original Complaint. [ECF 1]. Plaintiffs assert claims against Defendant United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)

2.      On October 3, 2023, Defendant filed its Motion to Dismiss which was approximately 37 pages long. [ECF 13]. The Motion to Dismiss required leave to exceed the page limits set by Rule CV-7(d)(3) as it was approximately 37 pages long. The Court granted Defendant's unopposed motion for leave to exceed the page limits set by Rule CV-7(d)(3).

3.      Plaintiffs now seek to file their response to Defendant's motion to dismiss.

4.     Rule CV-7(d)(3) of the Local Rules of this Court states that dispositive motions and responses thereto filed with the Court shall be limited to 20 pages in length, unless otherwise authorized by the Court.

5.     Plaintiffs' counsel have made numerous edits and changes in an effort to comply with the 20 page limit but are unable to further shorten the request and still fully set forth Plaintiffs' position.  Plaintiffs' present Response is approximately 33 pages long – 13 pages over the Court's page limit.

6.     Plaintiffs are mindful of the Court's time and need for efficient litigation.  Nevertheless, despite repeated edits and review, properly responding to the issues raised by the 37-page Motion to Dismiss requires Plaintiffs to exceed the page limits set under the Local Rules.  Leave is not sought for purposes of delay but so that justice may be done.

7.     The undersigned counsel conferred with Defendant's counsel and they indicated that Defendant is unopposed to the relief requested in this Motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that their Motion for Leave to File Response in Excess of Twenty Pages be granted.


Dated: November 9, 2023                    Respectfully submitted,

                                           COYLE & BENOIT, PLLC
                                           2515 North Stanton Street
                                           El Paso, Texas 79902
                                           (915) 532-5544
                                           Fax (915) 532-5566


                                           */s/ Christopher Benoit*
                                           **Christopher Benoit**
                                           Texas Bar No. 24068653
                                           chris@coylefirm.com

                                           and

Julie R. Ulmet (*pro hace vice* application pending)
THE LAW OFFICES OF JULIE R. ULMET
417 Grand St., #1804
New York, NY 10002
Tel (646) 396-0055
Fax (646) 340-1022
julie@ulmetlaw.com

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will cause all parties or counsel of record to be served by electronic means.

*/s/ Christopher Benoit*
**Christopher Benoit**

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 7, 2023, I let Defendant's counsel know of the relief sought. Counsel stated that she is unopposed to the relief sought.

*/s/ Christopher Benoit*
**Christopher Benoit**

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

ARMANDO AGUILAR MORALES, on
behalf of himself and his minor daughter
J.J.A.R., and PEDRO RAMOS PEREZ on
behalf of himself and his minor son F.R.I.,

          *Plaintiffs*,

v.

UNITED STATES OF AMERICA,

          *Defendant*.

Civil Action No. 3:23-cv-00247-KC

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ iii

STATEMENT OF THE ISSUES.......................................................................................vi

INTRODUCTION ..............................................................................................................1

STATEMENT OF FACTS .................................................................................................2

   A.  The Aguilar Family ..................................................................................................2

   B.  The Ramos Family ...................................................................................................4

ARGUMENT ......................................................................................................................6

   A.  Legal Standard .........................................................................................................6

   B.  The Court Has Subject Matter Jurisdiction over this Case........................................6

       1.   The Discretionary Function Exception Does Not Bar Plaintiffs' Claims. .............6

          a.  Legal Standard ...........................................................................................7

          b.  The Flores Decree and Various Federal Directives Deprived the Government's Agents of the Discretion to Separate Plaintiffs and to Fail to Reunify Them............................................8

          c.  The Constitution Deprived the Government of Discretion in Separating and Failing to Reunify Plaintiff Families. ...................................................................12

          d.  The Flores Decree and Various Federal Directives and Deprived the Government's Agents of Discretion in the Conditions of Confinement. ........................................17

             i.  The DFE Does Not Apply to the Government's Decision to Deprive Plaintiffs of the Ability to Communicate With Each Other. ........................................18

             ii.  The DFE Does Not Apply to the Government's Decision to Deprive F.R.I. of Language Access. .......................................................................18

             iii.  The DFE Does Not Apply to the Government's Failure to Adequately Protect J.J.A.R. ...............................................................................19

             iv.  The DFE Does Not Apply to the Government's Other Decisions Regarding Conditions of Confinement and Failure to Provide Medical Treatment...........................19

          e.  Plaintiffs' Negligent Supervision Claims are not Barred by the DFE.............................20

       2.   The Due Care Exception Does Not Bar Plaintiffs' Claims. ................................20

          a.  No Statute or Regulation Mandated the Government's Conduct. ....................................21

          b.  The Government Does Not Establish that its Agents Acted with Due Care. ..................23

       3.   There is a Private Person Analogue to Plaintiffs' Claims. ..................................24

          a.  The Private Analogue Provision Does Not Bar FTCA Claims Arising Out of Immigration Enforcement. ....................................................................24

          b.  Under Texas Law, A Private Person Could Be Sued for IIED, Negligence, and Abuse of Process Under Reasonably Similar Circumstances................................26

4.   The Independent Contractor Exception Does Not Bar the Claims. ...................................28

C.   The Complaint States a Cause of Action Under Texas Law ...................................................30

1.   The Complaint States a Claim for Intentional Infliction of Emotional Distress Under Texas Law 30

2.   The Complaint States a Claim for Negligence Under Texas Law. ...................................31

3.   The Complaint States a Claim for Abuse of Process Under Texas Law. .........................32

CONCLUSION ..........................................................................................................................33

## TABLE OF AUTHORITIES

**Cases**

*A.E.S.E. v. United States*, No. 21-CV-0569 RB-GBW, 2022 WL 4289930 (D.N.M. Sept. 16, 2022) ............................................................................................................................2, 11, 18, 21, 26

*A.F.P. v. United States*, No. 121CV00780DADEPG, 2022 WL 2704570 (E.D. Cal. July 12, 2022) 2, 21, 26, 33

*A.I.I.L. v. Sessions*, No. 4:19-cv00481-JAS, 2022 WL 992543 (D. Ariz. Mar. 31, 2022) .................2

*A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020) ...............................1, 13, 14, 15, 17, 21

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) ............................................................29

*Ambrosio v. Carter's Shooting Ctr., Inc.,* 20 S.W.3d 262 (Tex. App. – Houston [14th Dist.] 2000)29

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020).............................................................................6

*Avalos-Palma v. United States*, 2014 WL 3524758 (D.N.J. July 16, 2014) .....................................25

*B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022)...................................................................................................................................2, 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................................6

*Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)....................................................7

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).............................................................29

*Bunikyte ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007)...............................................................................................................................................9

*C.M. v. United States*, No. 5:21-CV-0234-JKP-ESC, 2023 WL 3261612 (W.D. Tex. May 4, 2023) ...............................................................................................................................................*passim*

*C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) 1, 13, 14, 21, 26

*C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2023 WL 7102132 (D. Ariz. Oct. 24, 2023) 12

*Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) ..................................................................24

*County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).........................................................14, 15

*D.A. v. United States,* No. EP-22-CV-00295-FM, 2023 WL 2619167 (W.D. Tex. Mar. 23, 2023) ...............................................................................................................................................*passim*

*D.J.C.V. v. United States*, 605 F. Supp. 3d 571 (S.D.N.Y. 2022).........................................2, 16, 26

*F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040 (D. Ariz. July 22, 2022) ...2

*Flores Benitez v. Miller*, No. 3:22-CV-00884 (JCH), 2023 WL 5290855 (D. Conn. Aug. 17, 2023) 2

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016)....................................................................................9

*Flores v. Reno*, No. 85-CV-4544 (C.D. Cal. Jan. 17, 1997) ...............................................................8

*Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017)................................................................................8

*Fuentes-Ortega v. United States*, 640 F. Supp. 3d 878 (D. Ariz. 2022)..........................15, 17, 20, 26

*Fulton v. Bed Bath & Beyond, Inc.*, 2006 WL 8436984 at *3 (N.D. Texas Oct. 30, 2006)..............27

*Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83 (Tex. App. – El Paso 2012) ....................................31

*Garcia-Feliciano v. United States*, No. CIV. 12-1959 (SCC), 2014 WL 1653143 (D.P.R. Apr. 23, 2014).......................................................................................................................................21

*Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472 (Tex. Civ. App.—Dallas 2010)............................27

*Gulf C. & S.F. Ry. Co. v. Redeker*, 67 Tex. 190, 2 S.W. 527 (1886) ................................................27

*Hajdusek v. United States*, 895 F.3d 146 (1st Cir. 2018)...................................................................11

*Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 57 (5th Cir. 2015) ........................................................27

*Hunt v. Baldwin*, 68 S.W.3d 117, 130 (Tex. App. – Houston [14th] 2001) ...............................32, 33

*Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155 (1st Cir. 1987)............................................24

*In re FEMA Trailer Formeldahyde Prods. Liab. Litig.*, 668 F.3d 281 (5th Cir. 2012)......................6

*In re Katrina Canal Breaches Consol. Litig.*, 627 F. Supp. 2d 656 (E.D. La. 2009).........................12

*Indian Towing Co. v. United States*, 350 U.S. 61 (1955) .................................................................25

*Jacinto-Castanon de Nolasco v. U.S. Immig. & Customs Enf't*, 319 F. Supp. 3d 491 (D.D.C. 2018)9, 23

*Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002)............................................27

*K.O. by & through E.O. v. United States*, 651 F.Supp.3d 331 (D. Mass. 2023)....2, 11, 14, 20, 22, 26

*Kroger Texas Ltd. P'ship v. Subaru*, 216 S.W.3d 788 (Tex. 2006)....................................................27

*Leticia and Yovany v. United States*, No. 22CV7527NGGRJL, 2023 WL 7110953 (E.D.N.Y. Oct. 27, 2023)......................................................................................................................................2, 33

*Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012) ......................................................................25

*M.G.U. v. Nielsen*, 325 F. Supp. 3d 111 (D.D.C. 2018) ...................................................................16

*Magnolia Place Health Care, L.L.C. v. Jackson*, No. 09-20-00266-CV, 2021 WL 6138801 (Tex. App. – Beaumont Dec. 30, 2021)...............................................................................................................28

*Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208 (9th Cir. 2001)............12

*Mayorov v. United States,* 84 F.Supp.3d 678 (N.D. Ill. 2015) ...........................................................25

*Moore v. Bushman*, 559 S.W.3d 645 (Tex. App. – Houston [14th] 2018).........................................32

*Ms. L. v. U.S Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1165 (S.D. Cal. 2018) .............15, 30

*Ms. L. v. United States Immigr. and Customs Enf't*, 310 F.Supp.3d 1133 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019)................................................................................................15, 23

*Nunez Eueda v. United States*, No. 220CV10793VAPGJSX, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) ..................................................................................................................................2, 17, 21

*Plyler v. Doe*, 457 U.S. 202, 215 (1982)..........................................................................................14

*Prescott v. United States*, 973 F.2d 696 (9th Cir. 1992) ..................................................................21

*Prince v. Mass.,* 321 U.S. 158 (1944) .............................................................................................30

*Romero v. Brown*, 937 F.3d 514 (5th Cir. 2019) .............................................................................14

*Ruiz v. United States*, No. 13-CV-1241, 2014 WL 4662241 (E.D.N.Y. September 18, 2014) ..........9

*Ryder Integrated Logistics, Inc. v. Fayette Cty.,* 453 S.W. 3d 922 (Tex. 2015) ..............................29

*S.E.B.M. v. United States*, No. 1:21-CV-00095-JHR-LF, 2023 WL 2383784 (D.N.M. Mar. 6, 2023) ................................................................................................................................................12

*Silcott v. Oglesby*, 721 S.W.2d 290 (Tex. 1986)..............................................................................27

*Smith v. Org. of Foster Fams. For Equal. & Reform*, 431 U.S. 816 (1977) .....................................30

*Spotts v. United States*, 613 F.3d 559 (5th Cir. 2010).......................................................................7

*Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62 (Tex. 1998).........................................27

*Texas Health Enterprises, Inc. v. Geisler*, 9 S.W.3d 163 (Tex. App. – Fort Worth 1999) ...............28

*Texel v. Granville*, 530 U.S. 57 (2000).............................................................................................30

*Trinity River Auth. v. Williams*, 689 S.W.2d 883 (Tex. 1985)...........................................................29

*Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993)............................................................................30

*UHS of Timberlawn, Inc. v. S.B. ex rel. A.B.*, 281 S.W.3d 207 (Tex. App. – Dallas 2009)...............28

*United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018)...............................................................................................................................................18

*United States v. Gaubert*, 499 U.S. 315 (1991) .................................................................................7

*United States v. Muniz*, 374 U.S. 150 (1963) ..................................................................................24

*United States v. Olson*, 546 U.S. 43 (2005) ...................................................................................24

*W. Rsrv. Medtec Servs., LLC v. Stryker Corp.*, No. 4:18-CV-2604, 2019 WL 13191641 (S.D. Tex. May 13, 2019) ................................................................................................................................29

*W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018) .................................................16

*Welch v. United States*, 409 F.3d 646 (4th Cir. 2005) .......................................................21

*Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022)..........................................................................................................................20

*Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010) ................................................................25

**Statutes**

28 U.S.C. § 2680(a)...............................................................................................................21

8 U.S.C. § 1232(b)(3)............................................................................................................22

8 U.S.C. § 1232(c)(2)(A)........................................................................................................23

8 U.S.C. § 1325 .....................................................................................................................13

Trafficking Victims Protection Reauthorization Act (TVPRA), Pub. L. No. 110-457, 122 Stat. 5044 (2008)...................................................................................................................22

**Other Authorities**

Restatement (Second) of Torts § 435A ................................................................................29

Restatement (Second) of Torts, § 46(1) ..............................................................................31

**Rules**

8 C.F.R § 1236.3.................................................................................................................8, 10

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................6

Fed. R. Civ. P. 12(b)(6) ......................................................................................................6, 30

National Standards on Transport, Escort, Detention and Search, https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-teds-policy-october2015.pdf...........................................................................................8, 10, 11, 19, 20

## <u>STATEMENT OF THE ISSUES</u>

1. Whether federal directives deprived Government employees of the discretion to separate Plaintiffs and to fail to reunify them, making the discretionary function exception ("DFE") to the Federal Tort Claims Act ("FTCA") inapplicable to Plaintiffs' claims.

2. Whether Government employees' decisions to separate Plaintiff families and fail to reunify them is susceptible to policy analysis and is not the kind of policymaking that the DFE was designed to shield, making the DFE to the FTCA inapplicable to Plaintiffs' claims.

3. Whether the United States Constitution's guarantees of equal protection, procedural due process, and substantive due process deprived Government employees of the discretion to separate Plaintiffs and to fail to reunify them, making the DFE inapplicable to Plaintiffs' claims.

4. Whether federal directives deprived Government employees of the discretion in maintaining certain conditions of confinement in which it held Plaintiffs, making the DFE inapplicable to Plaintiffs' claims.

5. Whether Government employees' actions or omissions were not required by any statute or regulation, and whether Government employees failed to exercise due care, making the Due Care Exception inapplicable to Plaintiffs' claims.

6. Whether, under Texas law, a private person could be sued for the torts alleged in this case under reasonably similar circumstances, thereby satisfying the Private Person Analogue requirement.

7. Whether the independent contractor exception to the FTCA bars certain aspects of Plaintiffs' claims, or whether the Government is liable for emotional distress that resulted as a foreseeable harm caused by its actions.

8.  Whether the Complaint plausibly states a claim for relief for various Texas common law torts, including intentional infliction of emotional distress, negligence, and abuse of process.

Now comes Plaintiffs Armando Aguilar Morales and his minor daughter J.J.A.R. (the "Aguilar Family"), and Pedro Ramos Perez and his minor son F.R.I. (the "Ramos Family"), by and through their counsel of record and file their response to Defendant's Motion to Dismiss.  In support of their response, Plaintiffs would show the Court as follows:

## **<u>INTRODUCTION</u>**

This lawsuit alleges that immigration officers working for the Department of Homeland Security ("DHS") subjected the Aguilar Family and the Ramos Family – immigrant families escaping desperation and violence in their native Guatemala – to deliberately cruel treatment designed to inflict harm and trauma. Plaintiffs bring suit under the FTCA based on various Texas common law torts, including intentional infliction of emotional distress, negligence, and abuse of process. The Government has filed a motion to dismiss arguing that because it generally has authority to enforce immigration laws, there is no remedy for the DHS agents' gross misconduct. The Government's arguments are without merit and its motion should be denied.

Indeed, this is just one of dozens of related cases around the country in which immigrant families have brought suit under the FTCA based on the actions of DHS agents that subjected them to egregious treatment, including the prolonged separations of parents and children in the cruelest ways possible. The Government's motion fails to mention that courts across the country – and in this District – have repeatedly rejected the Government's motions to dismiss these analogous cases based on the same arguments presented here. *See*, *e.g.*, *D.A. v. United States,* No. EP-22-CV-00295-FM, 2023 WL 2619167, at *8 (W.D. Tex. Mar. 23, 2023); *C.M. v. United States*, No. 5:21-CV-0234-JKP-ESC, 2023 WL 3261612, at *20 (W.D. Tex. May 4, 2023); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 997-8 (D. Ariz. 2020); *Nunez Eueeda v. United States*, No. 220CV10793VAPGJSX, 2021

WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021); *A.I.I.L. v. Sessions*, No. 4:19-cv00481-JAS, 2022 WL

992543, at *4 (D. Ariz. Mar. 31, 2022); *A.F.P. v. United States*, No. 121CV00780DADEPG, 2022

WL 2704570, at *1 (E.D. Cal. July 12, 2022); *F.R. v. United States*, No. CV-21-00339-PHX-DLR,

2022 WL 2905040, at *1 (D. Ariz. July 22, 2022); *A.E.S.E. v. United States*, No. 21-CV-0569 RB-

GBW, 2022 WL 4289930, at *13 (D.N.M. Sept. 16, 2022); *B.A.D.J. v. United States*, No. CV-21-

00215-PHX-SMB, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022); *D.J.C.V. v. United States*, 605 F.

Supp. 3d 571, 610 (S.D.N.Y. 2022); *E.S.M. v. United States*, No. CV-21-00029-TUC-JAS, 2022 WL

11729644 (D. Ariz. Oct. 20, 2022); *K.O. by & through E.O. v. United States*, 651 F.Supp.3d 331 (D.

Mass. 2023); *Flores Benitez v. Miller*, No. 3:22-CV-00884 (JCH), 2023 WL 5290855, at *22 (D.

Conn. Aug. 17, 2023); *Leticia and Yovany v. United States*, No. 22CV7527NGGRJL, 2023 WL

7110953 (E.D.N.Y. Oct. 27, 2023).

The Government presents no basis for this Court to reach a different conclusion than the many

sister courts that have considered the Government's motion and rejected it, and indeed, Plaintiffs'

claims here present no differences that should lead to a different result from these many analogous

cases.

## **STATEMENT OF FACTS**

### A.  **The Aguilar Family**

On or about April 21, 2018, Plaintiff Aguilar Morales and his then nine-year old daughter,

J.J.A.R crossed the U.S. border near El Paso, Texas. [ECF 1, ¶ 13]. CBP agents detained them in a

freezing-cold facility (referred to in Spanish as an "*hielera*" or icebox) with inadequate clothes,

blankets, and food.  [ECF 1, ¶ 14]. DHS found Mr. Aguilar Morales inadmissible based on his past

immigration history and ordered him removed but did not charge or prosecute Mr. Aguilar Morales

for illegal entry or any other offense. [*Id.* at ¶¶ 16, 17].

On or about April 25, 2018, the Government separated J.J.A.R. from her father by force. After hearing that Government agents planned to transfer J.J.A.R. to another facility, she sobbed and grabbed hold of her father, who in turn, grabbed hold of her. Immigration agents forcefully pried them apart. [*Id.* at ¶ 18]. Agents told Mr. Aguilar Morales that he would not see his daughter again and that the law required that children be separated from their parents. [*Id.* at ¶ 19]. For three agonizing days and nights, Mr. Aguilar Morales and his family had no idea where the agents had taken J.J.A.R. [*Id.* at ¶ 20].

CBP detained Mr. Aguilar Morales for one month where he continued to be held in cold facilities with inadequate clothing, blankets, and food. [*Id.* at ¶¶ 23, 24]. While in custody, Mr. Aguilar Morales developed a painful condition on his feet for which the government did not provide timely or adequate medical treatment. Mr. Aguilar Morales continues to suffer from foot pain as a result. [*Id.* at ¶ 25]. When Mr. Aguilar Morales learned that the Government planned to deport him, he objected that he did not want to leave his daughter alone in the United States. On May 21, 2018, rejecting this concern, the Government deported him. [*Id.* at ¶ 26].

Although immigration officials apprehended J.J.A.R with her father, on or around April 21, 2018, DHS processed J.J.A.R. separately and classified her as an "unaccompanied juvenile," transferring her to the custody of the Office of Refugee Resettlement ("ORR") in the Department of Health and Human Services ("HHS"). [*Id.* at ¶ 29]. Unbeknownst to her parents, the Government put J.J.A.R. on a plane and flew her more than two thousand miles away to New York City, where ORR placed her in the care and custody of contractor Cayuga Centers ("Cayuga"). [*Id.* at ¶ 30]. For more than five months, the Government detained J.J.A.R. in New York City away from her family. [*Id.* at ¶ 33]. During this period, the Government only permitted J.J.A.R. to speak with her family for about ten minutes per week. [*Id.* at ¶ 34].

The Government detained J.J.A.R. in a mixed-gender group home. [*Id.* at ¶ 35]. There, a male resident attempted to inappropriately touch J.J.A.R. and while she showered, he attempted to enter the bathroom and peek at her under the door. ORR policies required Cayuga staff to communicate this sexual abuse to ORR. [*Id.* at ¶ 37].

On or about September 27, 2018, J.J.A.R. was deported to Guatemala. [*Id.* at ¶ 40]. She was not given the chance to depart voluntarily when her father was deported or at any time earlier than this. [*Id.* at ¶ 41].

The separation, isolation, and sexual abuse caused J.J.A.R. deep and long-lasting emotional harm. [*Id.* at ¶ 42]. Even after returning home to her family in Guatemala, J.J.A.R. continued to suffer as a result of the traumas she experienced while in Government custody. Likewise, Mr. Aguilar Morales experienced intense emotional suffering after the Government separated J.J.A.R., and he continues to suffer emotional distress as a result of this experience, remembering the traumatic moment when Government agents ripped his sobbing young daughter out of his arms and the months of pain and suffering that followed. [*Id.* at ¶¶ 44, 45].

## B.  The Ramos Family

On or about May 8, 2018, Plaintiff Ramos Perez and his then twelve-year old son, F.R.I., crossed the U.S. border near El Paso, Texas. [*Id.* at ¶ 46]. Both spoke the Ixil language and spoke little or no Spanish and no English. *Id.* CBP agents detained them shortly thereafter. [*Id.* at ¶ 47]. The next day, on or about May 9, 2018, CBP agents separated F.R.I. from his father. DHS agents did not inform Plaintiff Ramos Perez in advance that they planned to take his son and did not inform Mr. Ramos Perez where they had taken F.R.I. [*Id.* at ¶¶ 48, 50].

On or about May 18, 2018, Mr. Ramos Perez pled guilty to illegal entry under 8 U.S.C. § 1325(a)(1) and was sentenced to time served. [*Id.* at p. 7[1]]. He was then returned to civil immigration detention. *Id.* Nearly two months later, on or about July 4, 2018, DHS officials for the first time allowed Mr. Ramos Perez and F.R.I. to speak by telephone for about five minutes. Even at that time, DHS officials still did not inform Mr. Ramos Perez where his son was being detained. [*Id.* at ¶ 52]. This was the only communication that DHS officials permitted between them during Mr. Ramos Perez's two months in Government custody before he was deported. [*Id.* at ¶ 53].

While in immigration custody, DHS provided Mr. Ramos Perez with inadequate clothing, blankets, and food. [*Id.* at ¶ 55]. On July 7, 2018, the Government deported him. At no time between his criminal proceedings and his deportation did the Government reunite him with F.R.I. [*Id.* at ¶ 56].

Although immigration officials apprehended F.R.I. with his father and detained them together, on or around May 9, 2018, DHS processed F.R.I. separately from his father, classifying him as an "unaccompanied juvenile." [*Id.* at ¶ 58]. From May 10, 2018, through November 5, 2018, the Government detained F.R.I. in a shelter for juvenile migrants. [*Id.* at ¶ 59; ECF 13, p. 7 fn.2]. While in custody, at no time did the Government provide F.R.I. with an interpreter who could communicate in his language, Ixil. [ECF 1, ¶ 61]. The Government permitted F.R.I. to make calls to his family in Guatemala only once a week for a few minutes and, as noted, did not permit him to have any contact with his father during Mr. Ramos Perez's detention, other than a single five-minute phone call days before his father's deportation. [*Id.* at ¶ 62].

---

[1] Citations to page numbers in the Government's Motion to Dismiss [ECF 13] refer to the native page numbering in the brief, not to the numbering in the electronically-filed PDF document.

## ARGUMENT

### A. Legal Standard

The Government moves to dismiss this action under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Its arguments claiming that the FTCA's limited waiver of the United States' sovereign immunity call the Court's jurisdiction into question and should be analyzed under the high standard of Rule 12(b)(1). "A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain" the plaintiff is not entitled to relief. *In re FEMA Trailer Formeldahyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012).

The Government also argues that dismissal is warranted against Plaintiffs' IIED, negligence, and abuse of process claims under Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) allows for dismissal if a party establishes that allegations are not "plausible on their face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a Rule 12(b)(6) motion, "the court must accept the facts in the complaint as true, [but] it will 'not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020).

### B. The Court Has Subject Matter Jurisdiction over this Case.

#### 1. *The Discretionary Function Exception Does Not Bar Plaintiffs' Claims.*

The Government's chief argument is that Plaintiffs' claims are barred by the discretionary function exception ("DFE") and, therefore, the Government retains its sovereign immunity. The Government claims that the DFE applies to "the decision to detain Plaintiff Aguilar Morales pending immigration proceedings," and "the decision to criminally prosecute Plaintiff Ramos Perez." [ECF 13, p. 13]. However, these are not the Government actions challenged in Plaintiffs' Complaint.

The Complaint goes far beyond challenging the decisions to detain or prosecute Mr. Aguilar Morales and Mr. Ramos Perez, respectively. The Complaint addresses – and the Government fails to address – non-discretionary parts of the Government's conduct which caused harm to Plaintiffs,

including: separating Plaintiff children and fathers through the use of force, sending Plaintiff children and fathers hundreds of miles apart from each other, refusing to timely inform Plaintiff children and fathers of each other's whereabouts or well-being, depriving Plaintiff children and fathers of any regular or meaningful opportunities for communication with one another, and engaging in inordinate delays in reuniting Plaintiff children and fathers. [ECF 1, ¶ 152]. The Government also fails to respond to the Complaint's allegations that the Government caused further harm by keeping Plaintiff children and fathers in inadequate conditions in detention, including by housing J.J.A.R. in conditions in which another detainee sexually abused her, failing to provide F.R.I. with any language interpretation services, keeping Plaintiffs in facilities with freezing cold temperatures, failing to provide Plaintiff fathers with adequate and unspoiled food, and failing to provide Mr. Aguilar Morales with proper medical treatment. [*Id.* at ¶ 153].

        a.  <u>Legal Standard</u>

Under the test set forth by the Supreme Court, agency conduct qualifies as a discretionary function if two prongs are satisfied. *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010) (citing *Berkovitz by Berkovitz v. United States*, 486 U.S. 531 (1988)). First, the conduct must be "a matter of choice for the acting employee," and if "a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action," then the agency's authority is considered to be discretionary. *Id.* (quoting *Berkovitz*, 486 U.S. at 536, 539). However, "the discretionary function exception does not apply if the challenged actions in fact violated a federal statute, regulation, or policy." *Id*. (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).

If a court finds that the conduct is not proscribed under the first prong, it must move to the second prong and decide "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz*, 486 U.S. at 536)). The purpose of the DFE is "to prevent judicial second-guessing of legislative and

administrative decisions grounded in social, economic, and political policy," and thus it protects only conduct "based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 323, 325, 325 n. 7 (1991) (internal citations and quotation marks omitted).

b.   The Flores Decree and Various Federal Directives Deprived the Government's Agents of the Discretion to Separate Plaintiffs and to Fail to Reunify Them.

The separation of Plaintiff fathers and children, as alleged, violated (1) the Stipulated Settlement Agreement from *Flores v. Reno*, No. 85-CV-4544, Dkt. No. 177 (C.D. Cal. Jan. 17, 1997) (the "*Flores* Decree") [2], (2) 8 C.F.R § 1236.3, and (3) CPB's own rules set forth in the National Standards on Transport, Escort, Detention and Search, https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-teds-policy-october2015.pdf (the "TEDS Standards"). [ECF 1, ¶¶ 107-108 (*Ms. L.*), 116-127 (*Flores*), 128-29 (8 C.F.R § 1236.3); 130-35 (TEDS Standards)].

First, the *Flores* Decree  arose out of litigation brought on behalf of minor children held in immigration detention and the 1997 consent decree remains binding on the United States. *See Flores v. Sessions*, 862 F.3d 863, 869 (9th Cir. 2017) (recognizing that the *Flores* decree continues to govern agencies that now carry out the functions of the former INS, including DHS and ORR).

ORR, DHS, and their agents have a well-established legal obligation to ensure the prompt release of minors held in immigration custody and to favor preserving family unity whenever possible. *See Flores* Decree; 8 C.F.R. § 1236.3. The *Flores* Decree also significantly limits the circumstances, duration, and manner of immigration detention of minor children, and requires ORR, DHS, and their agents to prioritize the prompt release of detained minors. [ECF 1, ¶ 118].

---

[2] The *Flores* Decree predates the use of electronic case filing in the *Flores* case and is available online at https://www.aclu.org/sites/default/files/assets/flores_settlement_final_plus_extension_of_settlement01179.pdf.

The *Flores* Decree applies to minors, like J.J.A.R. and F.R.I., who arrived in the United States with their parents. *See Flores v. Lynch*, 828 F.3d 898, 907-08 (9th Cir. 2016) (holding that the *Flores* Decree "unambiguously applies to accompanied minors"); *see also Bunikyte ex rel. Bunikiene v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070, at *3 (W.D. Tex. Apr. 9, 2007) ("[T]he *Flores* Settlement, by its terms, applies to all 'minors in the custody' of ICE and DHS, not just unaccompanied minors.").

The *Flores* Decree did not give Government agents discretion to separate children from their fathers and transfer them to ORR custody. The *Flores* agreement gave detained parents the right to have children placed into ORR custody, sent out of family detention, or to waive their right to those actions. *Flores*, 2018 WL 4945000, at *4. The *Flores* Decree expresses an explicit policy favoring the release of minors to their parents or legal guardians. *See Ruiz v. United States*, No. 13-CV-1241, 2014 WL 4662241, at *7 (E.D.N.Y. September 18, 2014). It did not permit the Government to separate children from their parent and to decline to reunify them. *Id.* at *8. That Plaintiff Ramos Perez was charged with a criminal misdemeanor does not change the analysis. *Jacinto-Castanon de Nolasco v. U.S. Immig. & Customs Enf't*, 319 F. Supp. 3d 491, 495 n.2 (D.D.C. 2018) (even if plaintiff mother was prosecuted, her children were "not true unaccompanied minors."). Thus, Government agents violated these *Flores* requirements by separating and failing to promptly reunite Plaintiff families, and the DFE cannot shield the Government's conduct because it violated federal policy as mandated by the *Flores* Decree.

Second, Government agents also violated federal regulation. Consistent with the *Flores* Decree, 8 C.F.R. § 1236.3 imposes a mandatory, non-discretionary duty on ICE to prioritize the release of detained minors to family members over refugee shelters or foster care. [ECF 1, ¶ 128]. Here, the Government violated that federal regulation by: (1) separating the Aguilar family because

Mr. Aguilar Morales was not placed in criminal proceedings; and (2) failing to reunify the Ramos family following Mr. Ramos Perez's criminal proceedings and return to civil immigration detention.

Third, the Government's conduct violated the TEDS Standards – which create binding legal obligations with respect to individuals detained in CBP custody. [ECF 1, ¶ 130]. The TEDS Standards require that the Government "maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation." TEDS Standards, § 1.9. Specifically, the TEDS Standards provide, "family units with juveniles should not be separated." *Id.*

Because no legal requirement, safety concern, or security concern required separating Plaintiff families, DHS officers violated this standard by separating Plaintiff families and failing to reunify them. In the case of Mr. Aguilar Morales, he was never placed in criminal proceedings so the Government unequivocally violated this TEDS standard. [ECF 1, ¶ 132]. For Mr. Ramos Perez, there was no requirement to separate him from his child, but even if his prosecution is construed as a "legal requirement" temporarily mandating separation, the Government should have reunified him with F.R.I. immediately after the criminal proceeding concluded.

More importantly, even if these directives do not satisfy the first prong of the *Berkowitz* analysis, the decision to separate Plaintiff fathers and children and decline to reunify them clearly fails the second prong of the *Berkowitz* analysis which looks to whether the conduct is "susceptible to policy analysis." *K.O.*, 651 F.Supp.3d at 345 (citing *Hajdusek v. United States*, 895 F.3d 146, 150 (1st Cir. 2018)). *See also A.E.S.E.*, 2022 WL 4289930, at *11.

The second prong asks whether initial and on-going family separation was susceptible to a weighing of competing policy priorities. *K.O.,* 651 F.Supp.3d at 345-46. The TEDS Standard and the

*Flores* Decree "establish settled legitimate priorities." *Id.* The standards make clear that only "an articulable safety or security concern" can justify separation. *Id.*

The decision to separate Plaintiff families and decline to reunify them is not susceptible to policy analysis. Plaintiffs have alleged that the only articulated reason for separating families was the *in terrorem* effect it may have on parents and families. [ECF 1, ¶¶ 73, 76, 84, 111]. The El Paso Pilot Project commenced in April 2017 with a decision to prosecute parents in family units under 8 U.S.C. §§ 1324 *and* 1325 for the purpose of acting as a "deterrent to parents." [*Id.* at ¶ 76]. *See also* [*id.* at ¶ 115) (former-DHS Secretary stated purpose of family separation was to be a "tough deterrent")]. The Pilot Project was superseded by the Zero Tolerance Policy in 2018 again with an express purpose to "'create a more effective deterrent.'" [*Id.* at ¶ 84]. In taking these actions, the Government ignored repeated warnings—including from, among others, the U.S. Attorney for the Western District of Texas and judges in this District—that its actions would severely impact the safety of children and cause trauma. [*Id.* at ¶¶ 78, 79, 81, 85, 89, 90, 96-101, 103, 106, 115]. Since this stated purpose is not consistent with the directives' policy considerations of separating families only on the basis of legitimate priorities of safety or security concerns, Plaintiffs have met their burden to show that the conduct was not susceptible to policy analysis and the DFE does not apply. The Government's failures therefore did not reflect a "weighing of practical and policy considerations [that] represents the kind of policy judgment that Congress intended to protect through the [DFE]." *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001). Furthermore, even if the high-level decision to adopt a Zero Tolerance Policy were "grounded in policy considerations," the implementation of the program, including the decisions of DHS agents to deliberately subject Plaintiffs to prolonged separation and detention and multiple forms of mistreatment while in custody was not. *In re Katrina Canal Breaches Consol. Litig.*, 627 F. Supp. 2d 656, 689 (E.D. La. 2009)

("decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not") (quoting *Marlys Bear Med.*, 241 F.3d at 1215).

The Government relies on *S.E.B.M. v. United States*, one of the very few cases around the country to find that FTCA claims based on family separations were barred by the DFE. [ECF 13, p. 14 (citing *S.E.B.M. v. United States*, No. 1:21-CV-00095-JHR-LF, 2023 WL 2383784, at *15 (D.N.M. Mar. 6, 2023)]). But *S.E.B.M.* held only that the decision to *prosecute* was discretionary. As to Mr. Aguilar Morales, this holding has no bearing because he was never prosecuted, and as to all Plaintiffs, the *S.E.B.M.* decision does not extend to the decisions challenged here, including the decisions to separate Plaintiff families and fail to reunite them, detain them in immigration custody, deprive them of communication with each other, and other decisions related to their treatment in custody. *See C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2023 WL 7102132, at *11 (D. Ariz. Oct. 24, 2023) (distinguishing *S.E.B.M.* where "[p]laintiffs were never prosecuted or held in criminal custody" and rejecting argument that "detention in ICE custody was a discretionary act"). *Cf. D.A. v. United States,* No. EP-22-CV-00295-FM, 2023 WL 2619167, at *8 (W.D. Tex. Mar. 23, 2023) (incarceration of parent and separation of family not protected by DFE because the Zero Tolerance Policy "plausibly amounted to selective prosecution motivated by discriminatory animus against Latino immigrants"). Finally, *S.E.B.M.* is simply not binding on this Court nor should it be considered persuasive in the face of overwhelming jurisprudence to the contrary.

c.   The Constitution Deprived the Government of Discretion in Separating and Failing to Reunify Plaintiff Families.

Plaintiffs' claims based on Defendant's separation and failure to reunify are also not protected by the DFE because Defendant's conduct violated Plaintiffs' constitutional rights. [ECF 1, ¶136]. Courts in this district have recently held that unconstitutional actions are not protected by DFE under the first prong of the analysis. *See D.A.,* 2023 WL 2619167, at *9 ("The issue of constitutional rights

is relevant only with respect to whether Defendant had discretion to act as it did and, therefore, whether it retains immunity from suit regarding Plaintiffs' state law causes of action."); *C.M.*, 2023 WL 3261612, at *31 ("the duty to comply with the United States Constitution may remove discretion from federal actors and thus render the [DFE] inapplicable").[3] Defendant's separation of and failure to reunify Plaintiffs violates their constitutional rights to equal protection and procedural and substantive due process. *See Id.* at *9-10; *C.M.*, 2020 WL 1698191, at *4; *A.P.F.*, 492 F. Supp. 3d at 996-97.

First, Plaintiffs allege that the Government violated their right to equal protection because Government agents were motivated by discriminatory animus towards Latino immigrants of Central American origin. [ECF 1, ¶¶ 140-44]. The Zero Tolerance Policy – directing U.S. Attorneys to adopt a zero-tolerance policy for all offenses referred for prosecution under 8 U.S.C. § 1325 – amounted to selective prosecution motivated by discriminatory animus as it applied only to prosecutors "along the Southwest border" who were viewed as being on the "front lines" of a "battle," while leaving others similarly situated along the Northern border unaffected. [*Id.* at ¶ 142]. *See also D.A.*, 2023 WL 2619167, at *8 ("Defendant's Zero Tolerance Policy plausibly amounted to selective prosecution motivated by discriminatory animus against Latino immigrants."). Indeed, other individuals subjected to the same harsh treatment and separation as Plaintiffs were disproportionately from Central America – more than 95 percent of the members in the *Ms. L* certified class are from Central American countries. [ECF 1, ¶ 141].

The constitutional right to equal protection under the law, and to freedom from invidious discrimination by the government on the basis of race or national origin, has long been recognized as

---

[3] As Defendant points out, there is no controlling opinion from the Fifth Circuit barring a court from deriving a duty from the Constitution as a basis for determining that the DFE does not apply. [ECF 13, p. 23].

"extend[ing] to anyone, citizen or stranger, who is subject to the laws of a State," whether or not lawfully present in the United States. *Plyler v. Doe*, 457 U.S. 202, 215 (1982) (emphasis removed). Thus, as a plausible violation of their equal protection rights, the criminal prosecution of Plaintiff Ramos Perez and separation from his son, and separation of Plaintiff Aguilar Morales from his daughter is not protected by DFE. *Id.*

Second, Defendant's forced separation of Plaintiffs and failure to reunify them violated Plaintiffs' constitutional right to family integrity which is secured by procedural and substantive due process. [ECF 1, ¶ 137]. In the context of the right to family integrity, due process requires that "[a] child cannot be removed without a court order or exigent circumstances." *Romero v. Brown*, 937 F.3d 514, 521 (5th Cir. 2019) (internal quotation omitted). Exigent circumstances, in turn, means that there is an "imminent danger of physical or sexual abuse" or "an emergency related to the children's safety." *Id.* The right to family integrity recognizes a fundamental liberty interest in a parent's custody and control of his children. *See, e.g.*, *K.O.*, 651 F.Supp.3d at 346-47; *C.M.*, 2020 WL 1698191, at *4; and *A.P.F.* 492 F. Supp. 3d at 996-97. With respect to the substantive due process rights, the right to family integrity is violated when government action can be characterized as "arbitrary or conscience shocking." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).

Plaintiffs acknowledge that parents and children may lawfully be separated during the time when the parent is placed lawfully in criminal custody. *See K.O.*, 651 F.Supp.3d at 347. However, here, Plaintiffs were initially detained together in civil immigration detention before they were separated. Mr. Ramos Perez was selectively charged under 8 U.S.C. § 1325 and separated from his child. Mr. Aguilar Morales was not prosecuted and separated from his child solely because he was placed into civil removal proceedings. In addition, Plaintiff Ramos Perez was sentenced to time served

and placed back in civil detention just ten days after his initial entry and eight days after the separation, then remaining in civil detention during the remainder of his time in the country.

The separation of the Ramos family prior to Mr. Ramos Perez's criminal prosecution and the continued separation of, and failure to reunify, the Ramos family after his sentence, and entire separation of, and failure to reunify, the Aguilar family, violated their rights to family integrity. Plaintiffs were not given a meaningful opportunity to be heard, there were no exigent circumstances justifying the separations, and their long-term separations were arbitrary since the Aguilar family should not have been separated in the first place and the Ramos family, at a minimum, should have been reunited after the criminal proceedings. *See D.A.*, 2023 WL 2619167, at *9 (citing *Ms. L. v. United States Immigr. and Customs Enf't*, 310 F.Supp.3d 1133, 1143 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019)).[4] Such conduct is "brutal, offensive … and 'shocks the conscience' and violates Plaintiffs' constitutional right to family integrity." *Ms. L. v. U.S Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1165 (S.D. Cal. 2018) (citing *County of Sacramento*, 523 U.S. at 847 n.8).

Many other courts looking at this issue have that found forced family separation and failure to reunify families unconstitutional and outside the scope of the DFE. *See*, *e.g*., *K.O.*, 2023 WL 131411, at *9 (DFE does not apply because family separations were unconstitutional); *Fuentes-Ortega v. United States*, 640 F. Supp. 3d 878, 883 (D. Ariz. 2022) (same); *A.P.F.*, 492 F. Supp. 3d at 996 (finding that "separating families, and the procedures used to implement this practice," were unconstitutional and thus DFE does not apply); *D.J.C.V.*, 605 F. Supp. 3d at 591 (family separations violated both procedural and substantive due process and thus DFE does not apply); *M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 121 (D.D.C. 2018) (family separations violated substantive due process); *Ms. L.*, 302 F. Supp. 3d at 1167  (family separations violated substantive due process and

---

[4] The time Ramos Perez spent in U.S. Marshals custody also was unconstitutional since it was the product of a selective prosecution in violation of his equal protection rights, as argued above.

right to family integrity); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1124-26 (N.D. Ill. 2018) (maintaining family separation subsequent to criminal process violated substantive due process).

In this District, courts examining analogous family separations have found that the continued separations violated the family members' constitutional rights. Even if the Government was initially within its rights to separate a child from a parent in criminal custody, these principles "do not explain the failure of the Government to conduct any sort of hearing regarding [plaintiff's] parental rights upon his return to immigration detention." *C.M.*, 2023 WL 3261612, at *37-38 (concluding that even if initial separation were not unlawful, Government's continued separation of plaintiff parent and children upon parent's return to immigration detention "plausibly allege[s] that the Government violated procedural due process rights under the Fifth Amendment"). *See also D.A.*, 2023 WL 2619167, at *9 (based on one month between initial separation and children's return to parent, "[s]uch extreme separation following [plaintiff's] incarceration plausibly violated Plaintiffs' due process rights to family integrity").

The Government argues that the FTCA does not create a cause of action for constitutional torts, but this point "conflates the difference between a cause of action and a basis for immunity from a cause of action." *D.A.*, 2023 WL 2619167, at *9. The causes of action here are based on Texas tort law, and the foregoing constitutional analysis demonstrates that the DFE cannot shield the Government from liability for that tortious conduct.

Further, the Government acknowledges that no controlling Fifth Circuit law prohibits a plaintiff from relying on the U.S. Constitution to establish that the DFE does not apply. The Government does, however, rely on "two unpublished opinions" to argue that the Complaint here does not identify such a specific course of conduct based on the Constitution or cases interpreting

constitutional rights. [ECF 13, p. 24]. The Court need not rely on these non-binding cases.[5] Courts in this District have concluded on similar facts, "the constitutional prescription of procedural due process was clearly established well before the circumstances of this case." *C.M.*, 2023 WL 3261612, at \*42 (citing *D.A.*, 2023 WL 2619167, at \*9). Here, the Constitution prohibited Defendant's prosecution, separation, and failure to reunify. Equal protection and the right to family integrity impose specific prohibitions on Defendant's conduct. The constitutional prohibitions alleged here are sufficiently specific as courts have repeatedly found under nearly identical circumstances. *See*, *e.g. Fuentes-Ortega*, 640 F.Supp.3d 878, at \* 3; *A.P.F.*, 492 F. Supp. 3d at 996; *Nunez Euceda*, 2021 WL 4895748, at \*3; *C.M.*, 2020 WL 1698191, at \*4.

Therefore, because the forced family separations and failures to reunify were unconstitutional, the DFE does not apply to Plaintiffs' claims insofar as they allege that this conduct violated Texas tort laws.

  d. <u>The Flores Decree and Various Federal Directives and Deprived the Government's Agents of Discretion in the Conditions of Confinement.</u>

Nor does the DFE apply to Plaintiffs' challenge of the Government's conduct related to the conditions of Plaintiffs' confinement. As an initial matter, the Government balkanizes each factual allegation and tries to reject each allegation on its own. [ECF 13, p. 10-21]. The Government's effort to challenge each aspect of the factual allegations separately should be rejected, as each set of facts is pleaded in order to "demonstrate[e] the harm resulting from the separations," and should be considered in the totality of the harms suffered by each Plaintiff. *See A.P.F.*, 492 F. Supp. 3d at 996–

---

[5] In fact, other circuits have regularly found that the Constitution can limit discretion for purposes of the DFE. *See, e.g., Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1065 (9th Cir. 2020) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's [DFE] wil not apply."); *Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001); *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3rd Cir. 1988); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987); *and Myers & Myers Inc. v. USPS*, 527 F.2d 1252, 1261 (2nd 1975).

97 (rejecting Government's "re-categorization of Plaintiffs' factual allegations as standalone claims"). Nonetheless, the Government's effort to apply the DFE to each allegation also fails for reasons specific to each set of facts.

>   i.  *The DFE Does Not Apply to the Government's Decision to Deprive Plaintiffs of the Ability to Communicate With Each Other.*

The *Flores* Decree "clearly states that facilities holding the minors after arrest 'will provide . . . contact with family members who were arrested with the minor.'" *United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018 WL 315759, at \*7 (W.D. Tex. Jan. 5, 2018) (quoting *Flores* Decree), *aff'd sub nom. United States v. Vasquez-Hernandez*, 314 F. Supp. 3d 744 (W.D. Tex. 2018), *aff'd*, 924 F.3d 164 (5th Cir. 2019) (emphasis omitted). *See also D.A.*, 2023 WL 2619167, at \*7.

Failure to provide minors with contact to their parents is not grounded in any social, political, or economic policy considerations. *A.E.S.E.*, 2022 WL 4289930, at \*13 ("the Court is hard-pressed to find how a policy grounded in the management of facilities justifies the refusal to allow Plaintiffs to communicate for a month.").

Government agents violated the *Flores* Decree by failing to provide Plaintiff children with sufficient, legally-required contact with their fathers. For this reason, the Government's conduct depriving Plaintiffs of any communication with each other also falls outside the DFE.

>   ii.  *The DFE Does Not Apply to the Government's Decision to Deprive F.R.I. of Language Access.*

The *Flores* Decree also requires the Government to provide services "in a manner which is sensitive to the . . . native language . . . of each minomr." *Flores* Decree, Exhibit 1, § B. Here, DHS and ORR agents failed to provide F.R.I. with *any* language interpretation services whatsoever during his six months in government custody. For this additional reason, the Government's conduct depriving F.R.I. of language access falls outside the DFE.

18

iii.  *The DFE Does Not Apply to the Government's Failure to Adequately Protect J.J.A.R.*

The *Flores* Decree includes a requirement that immigration officers hold minor children in facilities that provide "adequate supervision to protect minors from others." *Flores* Decree, ¶ 12A. Here, ORR violated this requirement by placing nine-year-old J.J.A.R. with a contractor that failed to protect her from repeated sexual abuse by a male detainee. Government records indicate that the contractor completed reports which they were legally required to communicate to ORR, and thus ORR was aware of this failure of adequate supervision. Accordingly, ORR agents' conduct violated the *Flores* Decree and their conduct thus falls outside the DFE.

iv.  *The DFE Does Not Apply to the Government's Other Decisions Regarding Conditions of Confinement and Failure to Provide Medical Treatment.*

The *Flores* Decree includes a requirement that immigration officers hold minor children in facilities that provide "adequate temperature control and ventilation." *Flores* Decree, ¶12A. Further, the TEDS Standards require, as to temperature controls, "When it is within CBP control, officers/agents should maintain hold room temperature within a reasonable and comfortable range for both detainees and officers/agents. Under no circumstances will officers/agents use temperature controls in a punitive manner." TEDS Standards, § 4.7, p. 16. By subjecting Plaintiffs to freezing cold temperatures for purposes of punishment and deterrence, DHS officers violated this TEDS standard, as well as its obligations to Plaintiff children under the *Flores* Decree. [ECF 1, ¶¶ 14, 24, 55].

The *Flores* Decree also requires that the Government provide minor children with access to "drinking water and food." ¶ 12A. Likewise, the TEDS Standards require, the "Food provided must be in edible condition (not frozen, expired or spoiled)." TEDS Standards, § 4.13, p. 18. Further, "Adult detainees, whether in a hold room or not, will be provided with food at regularly scheduled meal times." *Id*. By failing to consistently provide Plaintiffs with adequate and edible food at regularly-

scheduled meal times, DHS officers violated this TEDS standard, as well as obligations under the *Flores* Decree. [ECF 1, ¶¶ 14, 24, 55].

In addition, the 2016 Performance-Based National Detention Standards ("PBNDS") addresses "Medical Care" and requires that detainees "shall be able to request health services on a daily basis and shall receive timely follow-up" and "receive continuity of care from time of admission to time of transfer, release or removal." [*Id.* at ¶ 135]. By failing to provide Mr. Aguilar Morales with adequate and timely medical attention for his foot pain and injuries, the Government violated this requirement. [*Id.* at ¶ 25].

e.   Plaintiffs' Negligent Supervision Claims are not Barred by the DFE.

Finally, the Government claims that Plaintiffs' claims for negligent supervision are barred under the DFE. However, as discussed above, DHS employees violated multiple federal directives and the U.S. Constitution in their treatment of Plaintiffs. The Government's blatant disregard for these legal requirements and DHS's own internal policies demonstrates that DHS managers were negligent in their non-discretionary duties to ensure that officers carried out their duties in accordance with these legal requirements. In analogous cases, courts have not applied the DFE to negligent supervision claims. *Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319, at *6 (N.D. Cal. May 10, 2022); *Fuentes-Ortega*, 640 F. Supp. 3d at 885. *Cf. K.O.*, 651 F. Supp. 3d at 350 (permitting negligent supervision claims based on assault and battery claims but not as to separation claims).

For these reasons, Plaintiffs' negligent supervision claims should not be barred by the DFE.

**2.   *The Due Care Exception Does Not Bar Plaintiffs' Claims.***

The Government next argues that the due care exception ("DCE") bars Plaintiffs' claims regarding "the decision to transfer J.J.A.R. and F.R.I. to [ORR] custody" because the Government employees' actions or omissions took place while they exercised due care in the execution of a statute or regulation. [ECF 13, p. 25-27] (citing 28 U.S.C. § 2680(a)). This exception applies only where the

Government can establish that its agents' actions took place in the: (1) execution of a "statute or regulation"; and (2) the officers exercised due care in executing that statute or regulation. *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005). The Government bears the burden of proving that this exception applies. *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992). Here, the Government cannot point to any statute or regulation that required the forcible separation of Plaintiffs.

a. No Statute or Regulation Mandated the Government's Conduct.

As to the first prong, Defendant must point to "a statute or regulation" that its agents were following. Defendant separated Plaintiffs pursuant to executive orders and internal policies. [ECF 1, ¶¶ 73-88] (setting forth Government policies through the date of Plaintiffs' separations). *See also A.F.P.*, 2022 WL 2704570, at *15. These do not carry statutory or regulatory mandates. *See C.M.*, 2023 WL 3261612, at *43 (even if "the Zero-Tolerance Policy mandated [plaintiff's] prosecution," the DCE would not provide "such a shield because only a mandatory statute or regulation invokes such exception – not a policy arising from an Executive Order"); *Garcia-Feliciano v. United States*, No. CIV. 12-1959 (SCC), 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (DCE "would not apply here . . . because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct" (citing *Welch*, 409 F.3d at 652)). Indeed, no law or regulation required the practice of family separation. *Nunez Euceda*, 2021 WL 4895748, at *3-4; *A.P.F.*, 492 F. Supp. 3d at 995-96; *C.M.*, 2020 WL 1698191, at *3.

In order to invoke this exception, the Government must also show that the separation was "required, not merely authorized, by a statute or regulation." *A.E.S.E.,* 2022 WL 4289930, at *14 (citing *A.F.P.,* 2022 WL 2704570, at *15) (internal citations omitted). The Government cites to just one law to support its argument that federal law required separation, claiming that 8 U.S.C. §

1232(b)(3) required its officers to place children into the custody and care of ORR. [ECF 13, p. 40].[6] This provision is found in the Trafficking Victims Protection Reauthorization Act (TVPRA), Pub. L. No. 110-457, 122 Stat. 5044 (2008).

In fact, this provision of the TVPRA only establishes a deadline and terms for transfer of unaccompanied minors – it does not mandate transfer, let alone family separation. *Id.* The Government appears to concede as such when it narrows the claimed application of the DCE only to the its decisions to place Plaintiff children in ORR custody – ignoring Plaintiffs' actual claims based on the Government's separation of Plaintiff children from their fathers (which happened before the TVPRA deadline for the Ramos family), its failure to reunify them after Mr. Ramos Perez was returned to civil immigration detention, or the lack of any basis to separate the Aguilar family since Mr. Aguilar Morales remained in civil immigration detention during his time in the United States. *See, e.g., K.O.*, 651 F.Supp.3d at 343 ("The problem with defendant's syllogism is . . . the children were *already separated* before the TVPRA became relevant") (emphasis in original). Nor does it explain how the TVPRA mandated Defendant's decision to keep Plaintiffs from communicating with each other for extensive periods of time or any of the other conduct that Plaintiffs challenge.

More importantly, far from being required by the TVPRA, the Government's actions may in fact *contravene* the TVPRA. The TVPRA mandates transfer of children who are "unaccompanied." 8 U.S.C. § 1232(b)(3). While the TVPRA requires ORR to take custody of unaccompanied children, it makes no reference to *accompanied* children who arrived with their parents, cruelly separating them from their parents, and only then sending them to ORR custody. *See generally id. See also A.P.F.*,

---

[6] Defendant refers obliquely to its authorization "to detain those parents for prosecution." [ECF 13, p. 27 n.7]. However, any authority to "detain . . . for prosecution" does not mandate detention or prosecution as the Government has discretion whether to prosecute or not prosecute for any crime and whether to detain in the interim—and of course, Plaintiff Aguilar Morales was not prosecuted, so this entire defense should be inapplicable to the Aguilar family. The DCE requires the existence of a statute that mandates (not just authorizes) certain actions. *Welch,* 409 F.3d at 652.

492 F.Supp.3d at 995-96 (finding that the TVPRA does not mandate separation or detention of a father away from his child). Indeed, courts have observed that minor children who are "detained with their parents at the border and . . . thereafter separated from their parents" are distinguishable from "true 'unaccompanied alien children.'" *Ms. L.,* 310 F. Supp. 3d at 1139.

Furthermore, 8 U.S.C. § 1232(c)(2)(A) arguably requires reunification of Plaintiff children with their fathers when their fathers were in civil immigration detention because that would have been the "least restrictive setting that is in the best interest of the child." *Jacinto-Castanon de Nolasco,* 319 F.Supp. 3d at 500 (rejecting argument that mother is unavailable to provide care and physical custody for purposes of the TVPRA" while "in lawful immigration custody") (internal citations omitted).

It is worth noting that the Government's position turns the TVPRA—a statute designed to protect immigrant children—into a weapon against immigrant children. The Government claims that federal officers were required to prosecute Plaintiff parents and transfer Plaintiff children, but this practice was created in a 180-degree reversal from years of past practice – solely to inflict harm on Central American migrant families. [ECF 1, ¶¶ 68-71]. Indeed, prior to the Pilot Program and Zero Tolerance policies, this District had very few criminal prosecutions of parents who were primary caregivers of children, raising many concerns from prosecutors and courts here when the new practices commenced. [ECF 1, ¶¶ 78, 79, 81, 87, 89, 90, 103].

In short, Defendant's conduct was not mandated by any statute or regulation and, therefore, the DCE does not apply.

      b.  <u>The Government Does Not Establish that its Agents Acted with Due Care.</u>

Next, even if a statute or regulation mandated the separations, the Government has failed to establish that its agents acted with due care. In this prong, "[t]he relevant question is one of reasonableness." *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987). In fact,

the Government does not even make this argument. [ECF 13, p. 38-40]. Therefore, the Government has failed to provide any support that it has satisfied the second prong of the DCE.

Indeed, it is hard to see how it could. Plaintiffs have alleged that Defendant's agents forcibly separated Plaintiffs [ECF 1 at ¶ 1, 18], failed to give Plaintiffs facts about each other [*Id.* at ¶¶ 20-22, 49, 51], was aware of and intended for its policy to result in traumatic separations of thousands of families [*Id.* at ¶¶ 71, 84, 90, 109, 111, 115], took no care to ensure communication between Plaintiffs for an extensive period of time [*Id.* at ¶¶ 34, 52, 53, 60, 62], and forced Plaintiffs into months-long separations, [*Id.* at ¶¶ 33, 63]. There is also no reasonable explanation why the Government did nothing to reunite Plaintiffs after Mr. Ramos Perez was released from criminal custody and why the Aguilar family was separated in the first place.

The Government has failed to meet its burden to show that the DCE bars Plaintiffs' claims.

### 3.   *There is a Private Person Analogue to Plaintiffs' Claims.*

The Government next argues that there is no waiver of sovereign immunity for Plaintiffs' claims because the conduct alleged constitutes "action of the type that private persons could not engage in and hence could not be liable for under local law." [ECF No. 13, p. 40] (citing *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988)) (internal quotes omitted).

    a.   The Private Analogue Provision Does Not Bar FTCA Claims Arising Out of Immigration Enforcement.

The Supreme Court has repeatedly held that the United States can be liable for activities over which the federal government has exclusive authority. *United States v. Olson*, 546 U.S. 43, 47 (2005) (claims against federal mine inspectors likely have private analogue despite fact that United States exclusively performs inspections of state mining sites); *United States v. Muniz*, 374 U.S. 150, 159-62, 165-66 (1963) (FTCA claim available for negligence by prison officials despite fact that imprisonment is an exclusive government function). In *Indian Towing*, for example, the Supreme

Court found a private analogue in a claim against the U.S. Coast Guard, which was responsible for the operation of lighthouses on the coast, for negligently checking the operations of various parts of a lighthouse and for failing to give warning that the light was inoperable. *Indian Towing Co. v. United States*, 350 U.S. 61, 62 (1955). The Supreme Court held that this claim was "analogous to allegations of negligence by a private person 'who undertakes to warn the public of danger and thereby induces reliance.'" *Olson*, 546 U.S. at 47 (quoting *Indian Towing*, 350 U.S. at 64-65).

More specifically, courts have found that FTCA claims can proceed in the context of immigration enforcement. In *Mayorov v. United States,* 84 F.Supp.3d 678 (N.D. Ill. 2015), the court permitted FTCA claims based on negligence (also alleged here), to go forward against federal immigration agents for their improper issuance of an immigration detainer. *See also Xue Lu v. Powell*, 621 F.3d 944, 947-50 (9th Cir. 2010) (rejecting the private analogue defense and allowing the plaintiffs' IIED claim where an asylum officer conditioned outcomes in the plaintiffs' immigration proceedings on satisfaction of demands for money and sexual favors); *Liranzo v. United States*, 690 F.3d 78, 80-81, 94-95 (2d Cir. 2012) (finding private analogue in state tort law allowing claims against private individuals for detention without "legal privilege to do so" in immigration detention context); *Avalos-Palma v. United States*, 2014 WL 3524758, at *12 (D.N.J. July 16, 2014) (private analogue doctrine did not bar claims arising from wrongful deportation). The Government cites no case law that reaches the holding it seeks – that immigration officers are inherently immune from suit under the FTCA because there is no private analogue in the immigration enforcement context. Taken to its logical conclusion, the Government's reasoning would bar FTCA claims in nearly every aspect of law enforcement – from prison officers to FBI agents – because of the uniquely governmental nature of their work. This is contrary to the bulk of FTCA case law.

Not surprisingly, then, almost every court to consider the Government's private analogue argument in the family separation context has rejected it. *See, e.g., D.A.,* 2023 WL 2619167, at *10; *C.M.*, 2020 WL 1698191, at *4; *B.A.D.J.*, 2022 WL 11631016, at *5; *A.E.S.E.*, 2022 WL 4289930, at *14-15; *A.F.P.*, 2022 WL 2704570, at *9-10; *D.J.C.V.,* 605 F.Supp.3d at 600; *K.O.*, 651 F.Supp.3d at 349-50.

The Government ignores this case law and, instead, relies solely on decisions which found that "controlling immigration" or "withdrawal of immigration benefits" have no private analogue. [ECF No. 13, p. 42] (citing six out-of-circuit decisions in the immigration context). With regards to the out-of-circuit decisions, the Government's argument misses the point. The reasonably similar conduct alleged here is not the Government's legal exercise of immigration laws – it is the illegal conduct in which Government agents engaged. As addressed below, IIED and negligence claims for abduction and separation of a child can be brought against *any* party if they meet the elements of those claims. Such conduct has a reasonably similar analogue in private litigation.

Notably, the Government fails to tailor its arguments to Texas tort law. Indeed, courts in this District have found private analogies under Texas law and observed that "other district courts presented with similar claims stemming from the Zero Tolerance Policy have recognized private analogies.'" *C.M.*, 2023 WL 3261612, at *20 (quoting *Fuentes-Ortega*, 640 F.Supp.3d at 884 and compiling cases). *See also D.A.*, 2023 WL 2619167, at *11 (finding private analogues under Texas law to claims relating to forced separation).

      b.  <u>Under Texas Law, A Private Person Could Be Sued for IIED, Negligence, and Abuse of Process Under Reasonably Similar Circumstances.</u>

Plaintiffs in this case seek recovery for the physical and emotional damages that resulted from DHS agents' deliberately cruel treatment of separating Plaintiff children and fathers. Under Texas law, an IIED claim can be brought under reasonably similar circumstances. In order to prevail on an

IIED claim, a plaintiff must demonstrate that: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused emotional distress; and (4) the emotional distress was severe. *Kroger Texas Ltd. P'ship v. Subaru*, 216 S.W.3d 788, 796 (Tex. 2006). An IIED claim is appropriate where emotional distress is "the intended or primary consequence of [defendant's] conduct." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998). Similar to the conduct at issue here, Texas courts have allowed IIED claims to proceed where the underlying wrong involved the interference with or destruction of a family relationship. *See*, *e.g.*, *Fulton v. Bed Bath & Beyond, Inc*., 2006 WL 8436984 at *3 (N.D. Texas Oct. 30, 2006) (denying dismissal of IIED claim based on individual's encouragement of husband to divorce spouse). Moreover, Texas has long recognized "'that a father has a tort cause of action when someone entices away or harbors his minor child.'" *C.M.*, 2023 WL 3261612, at *20 (citing *Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986) and *Gulf C. & S.F. Ry. Co. v. Redeker*, 67 Tex. 190, 2 S.W. 527, 528 (1886)).

Texas courts also recognize negligence claims against those who take custodial care of persons in similar situations – regardless of how they ended up in custodial care. *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) (to establish a breach of fiduciary duty under Texas law, the plaintiff must prove the existence of a fiduciary relationship that was breached and caused injury to the plaintiff) (citing *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. Civ. App.—Dallas 2010)); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002) (fiduciary duty "applies to any person who occupies a position of peculiar confidence towards another"). *See also UHS of Timberlawn, Inc. v. S.B. ex rel. A.B.*, 281 S.W.3d 207, 214 (Tex. App. – Dallas 2009) (denying dismissal where plaintiff alleged that psychiatric treatment center breached duty of care to patient to provide "an environment and housing where she would be kept safe" where she was sexually

assaulted by another patient); *Texas Health Enterprises, Inc. v. Geisler*, 9 S.W.3d 163, 167 (Tex. App. – Fort Worth 1999) (nursing home operator may be found negligent for violating duty of care owed to residents); *Magnolia Place Health Care, L.L.C. v. Jackson*, No. 09-20-00266-CV, 2021 WL 6138801, at *10 (Tex. App. – Beaumont Dec. 30, 2021) (denying dismissal where plaintiff alleged that the standard of care required nursing home to provide a safe environment and protect the patient from avoidable injury).

Finally, as stated in, *infra,* Sec. C(3), Texas law regularly permits suit against persons for abuse of process claims under a similar theory.

In short, Plaintiffs bring negligence, IIED, and other tort claims not on the basis of the Government's enforcement of "federal criminal and immigration laws," [ECF 13, p. 28], but on the basis of the Government's forced separation of Plaintiff families and mistreatment following those separations, including by failing to let the family members communicate, separating them for extended periods of time, and failing to reunify them. Because Texas law would support such claims against private persons or entities, the private person analogue does not bar these claims.

### 4.   *The Independent Contractor Exception Does Not Bar the Claims.*

The Government next argues that Plaintiffs' allegations that J.J.A.R. endured abuse while in foster care are barred by the FTCA's independent contractor exception. [ECF No. 13, ¶¶ 31-32]. However, Plaintiffs' Complaint does not assert these facts as an independent cause of action. Rather, Plaintiffs allege that the harm that J.J.A.R. suffered while in foster care as further traumatization that resulted from the Government's decision to separate her from and to reunify her with her father, Mr. Aguilar Morales, and she was unlawfully forced to fend for herself in ORR custody rather than remain in the protective embrace of her father. Thus, when evaluating the harm that J.J.A.R. suffered as a result of the Government's tortious conduct, her experience in ORR custody may be taken into account.

To establish that an injury resulted from a defendant's tortious conduct at the pleading stage, a party need only show that "the violation was the but-for and proximate cause of the injury." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008)).

Here, Plaintiff pleads sufficient facts to show proximate causation between Defendant's separation and J.J.A.R.'s abuse in foster care. Under the Restatement (Second) of Torts, "[a] person who commits a tort against another for the purpose of causing a particular harm to the other is liable for such harm if it results." § 435A (1965). The Government is responsible for all injuries that it proximately causes including those which are foreseeable. Under Texas tort law, a harm is a foreseeable result of a defendant's conduct where a reasonable defendant could anticipate the general danger – not the specific harm – that may result from the conduct. *Trinity River Auth. v. Williams*, 689 S.W.2d 883, 886 (Tex. 1985). Moreover, proximate causation is generally a question for the fact-finder. *W. Rsrv. Medtec Servs., LLC v. Stryker Corp.*, No. 4:18-CV-2604, 2019 WL 13191641, at *5 (S.D. Tex. May 13, 2019) (citing *Ryder Integrated Logistics, Inc. v. Fayette Cty.,* 453 S.W. 3d 922, 929 (Tex. 2015)). It is only a question of law where the evidence is undisputed and only one reasonable inference can be drawn. *Ambrosio v. Carter's Shooting Ctr., Inc.,* 20 S.W.3d 262, 266 (Tex. App. – Houston [14th Dist.] 2000).

The safeguards created by the Government and cited throughout Plaintiffs' complaint exist to ensure that children are able to have access to the protection and care of their parents. *See, e.g., Ms. L*, 302 F. Supp. 3d at 1161 (citing *Texel v. Granville,* 530 U.S. 57, 65 (2000) (recognizing that the Constitution protects the relationship between parent and child so that parents can exercise control over "the care, custody, and control of their children…")). As the Supreme Court has explained, "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose

primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Smith v. Org. of Foster Fams. For Equal. & Reform*, 431 U.S. 816, 843 (1977) (citing *Prince v. Mass.,* 321 U.S. 158, 166 (1944)). The Government should have known the general harm that could befall a child who is not in the custody and care of their fit parent.

The Government's conduct was committed for the purpose of causing emotional distress by separating children from their fit, available, guardian parents and leaving them with strangers. The Government should be liable for the emotional distress, including that caused by J.J.A.R.'s experiences in ORR custody, that resulted as a foreseeable harm caused by its forced separation and failure to reunify Plaintiffs.

## C. The Complaint States a Cause of Action Under Texas Law

Finally, the Government challenges Plaintiffs' IIED, negligence, and abuse of process claims under Rule 12(b)(6) for failure to state a claim under Texas law. For the reasons set forth below, each of these claims plausibly states a claim for which relief may be granted and should not be dismissed.

### 1. *The Complaint States a Claim for Intentional Infliction of Emotional Distress Under Texas Law*

Under Texas law, as stated above, the elements of IIED are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) defendant's actions caused the plaintiff emotional distress; and (4) the distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (adopting formulation in Restatement (Second) of Torts, § 46(1)). The Government argues that this claim cannot stand because "the decision to separate is neither extreme nor outrageous" where the separation occurs "pending the parent's criminal prosecution and/or immigration proceedings." [ECF 13, p. 33]. Here, the Complaint allege that the decision to separate was made of the sole purpose of inflicting emotional distress on Plaintiffs and other migrant families subjected to similar practices. [ECF 1, ¶¶ 73, 76, 84, 111, 115]. Indeed,

other courts examining this conduct have concluded that Government's forcible and continued separations of families was "brutal and offensive" *Ms. L*, 310 F.Supp.3d (internal quotation omitted) and "egregious and outrageous" *C.M.*, 2023 WL 3261612, at *40.

Further, as courts in this District have held in similar cases, an IIED claim can stand where the complaint alleges tortious conduct based on the Government's family separation policy because those allegations show that a prosecution that was pretextual or otherwise unlawful, government agents removed children without permitting a proper goodbye, and agents did not tell parents where the children had been taken, did not permit parents and children contact with each other, and most of the separation took place after the criminal proceedings had concluded. *D.A.*, 2023 WL 2619167, at *16. *See also C.M.*, 2023 WL 3261612, at *47 (on similar facts, stating that the court "has no difficulty in finding that" plaintiffs stated a claim for IIED where allegations related to conditions of detention and separation). Plaintiffs have stated facts to support an IIED claim.

### 2. *The Complaint States a Claim for Negligence Under Texas Law.*

Under Texas law, a negligence claim requires showing: "(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *D.A.*, 2023 WL 2619167, at *13 (citing *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. – El Paso 2012)). Just as the *D.A.* court found that the complaint there stated a claim for negligence because of the Government's breach of its "duty to provide appropriate medical care," the Complaint here alleges that the Government harmed Mr. Aguilar Morales by failure to provide adequate medical care. *Id.* Specifically, the Complaint alleges that while in CBP custody, Mr. Aguilar Morales developed a painful condition on his feet, for which he requested medical attention, but the Government failed to provide adequate medical attention for nearly two weeks. [ECF 1, ¶ 25]. As a result, Mr. Aguilar Morales was harmed and continues to suffer from foot pain. *Id.*

More generally, the Complaint alleges a claim for "negligence grounded in a breach of the duty owed by federal agents to persons in their care," and the claim should be allowed to go forward. *C.M.,* 2023 WL 3261612, at *47 (on similar facts, finding "Plaintiffs have alleged enough facts to plausibly state a negligence claim"). Finally, as stated in, *supra,* Sec. A(1)(e), the Complaint plausibly asserts a claim for negligent supervision.

### 3. *The Complaint States a Claim for Abuse of Process Under Texas Law.*

Finally, "the elements of abuse of process are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the plaintiff as a result of such illegal act." *Moore v. Bushman*, 559 S.W.3d 645, 653 (Tex. App. – Houston [14th] 2018). Further, "Texas law recognizes a cause of action for abuse of process where . . . the original issuance of a legal process is justified, but the process itself is subsequently used for a purpose for which it was not intended." *Hunt v. Baldwin*, 68 S.W.3d 117, 130 (Tex. App. – Houston [14th] 2001).

Applying these principles, courts applying Texas law have permitted claims for abuse of process arising from similar family separations. *D.A.,* 2023 WL 2619167, at *17 (denying a motion to dismiss a claim for abuse of process under Texas law based on allegations that criminal prosecution was pretextual and driven by discriminatory animus); *Leticia and Yovany,* 2023 WL 7110953, at *22 (denying a motion to dismiss a claim for abuse of process under Texas law where immigration process, subsequent to initial apprehension, was abused in order to traumatize plaintiff family); *A.F.P.*, 2022 WL 2704570, at *10 (permitting abuse of process claim under Texas law to proceed where criminal prosecution was used as a "pretext" to separate plaintiff family members).

Here, Plaintiffs allege that federal agents abused the criminal and immigration process to traumatize Plaintiff family members. Federal agents separated and failed to reunify Plaintiff families

in violation of their obligations under immigration law. [ECF No. 1, ¶¶ 18-19, 23-27, 33, 47-63]. They further abused the immigration process by denying Plaintiff families contact with each other. [*Id.* at ¶¶ 20-22, 33-36]. Finally, as to Plaintiff Ramos Perez, government agents abused the criminal process by enforcing criminal laws in a discriminatory manner. [*Id.* at ¶¶ 48-49, 123, 140-144]. Plaintiff children were harmed by these abuses of process when government agents separated them from their parents without a goodbye, failed to reunify them, and generally abused the immigration process in order to traumatize them. [*Id.* at ¶¶ 42-45, 52-55, 64-66].

To be clear, Plaintiffs do not challenge the application of immigration law to Plaintiffs. Rather, Plaintiffs allege that government agents used the existence of legal proceedings to traumatize all Plaintiffs and selectively enforced criminal law as to Mr. Ramos Perez. The point of Plaintiffs' claim is that the Government used the existence of criminal and immigration processes to inflict emotional pain on Plaintiffs. As the Government concedes, a claim for abuse of process is stated when a complaint alleges that "the process itself was 'used for a purpose for which it was not intended.'" [ECF 13, p. 37 (citing *Hunt*, 68 S.W.3d at 130)]. This is precisely what Plaintiffs allege here, and the Complaint plausibly states a claim for abuse of process.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully urge the Court to deny the Government's Motion to Dismiss in its entirety.

DATED:  November 9, 2023                    Respectfully submitted,

COYLE & BENOIT, PLLC
2515 North Stanton Street
El Paso, Texas 79902
(915) 532-5544
Fax (915) 532-5566

*/s/ Christopher Benoit*
**Christopher Benoit**

Texas Bar No. 24068653
chris@coylefirm.com

and

Julie R. Ulmet (admitted *pro hace vice*)
THE LAW OFFICES OF JULIE R. ULMET
417 Grand St., #1804
New York, NY 10002
Tel (646) 396-0055
Fax (646) 340-1022
julie@ulmetlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will cause all parties or counsel of record to be served by electronic means.

*/s/ Christopher Benoit*
**Christopher Benoit**